IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 15, 2006 Session

**STATE OF TENNESSEE v. TEVIAS BLEDSOE**

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court of Shelby County**
**No. 03-05465      Joseph B. Dailey, Judge**

---

**No. W2004-01585-SC-R11-CD - Filed on April 26, 2007**

---

The Defendant, Tevias Bledsoe, was charged with premeditated murder, murder in the perpetration of a felony, especially aggravated robbery, and unlawful possession of a handgun by a convicted felon, all in connection with the shooting death of Nathan Maroney. Apparently accepting the Defendant's theory that the shooting was accidental, the jury acquitted him of all charges except felonious possession of a handgun. On direct appeal, the Defendant challenged for the first time the trial court's jury instructions, claiming that the court should have charged the jury on the defense of duress. The Court of Criminal Appeals found that the trial court's failure to instruct the jury on the defense of duress was plain error and granted the Defendant a new trial. The State sought, and we granted, permission to appeal. We hold that the Defendant is not entitled to a new trial on the basis of plain error. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Reversed;**
**Judgment of the Trial Court Reinstated**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER and GARY R. WADE, JJ., and D. MICHAEL SWINEY, SP.J., joined.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; David H. Findley, Asst. Attorney General; William L. Gibbons, District Attorney General; Steve Jones and Amy Weirich, Asst. District Attorneys General; for the appellant, State of Tennessee.

William C. Anderson, Jr., Memphis, Tennessee, for the appellee, Tevias Bledsoe.

1

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the shooting death of Nathan Maroney during an early morning encounter with the Defendant, Tevias Bledsoe, in Memphis, Tennessee, on September 9, 2001. The facts included in the record for our determination of the issue before us include the testimonies of the Defendant and an eyewitness.

Alonzo Holt testified that he was sitting on his car in his driveway during the early morning hours when he heard two people arguing. He walked toward the noise to investigate. Near a high school, he saw a beige SUV next to which two men were standing and arguing. Holt stopped about forty yards away. Although it was between two and three o'clock in the morning, a street light made the arguing men visible. Holt heard one of the men tell the other one to give him something. The man who made the demand had a gun pointed at the other man and "was talking about killing him." Holt did not recognize the man holding the gun.

Holt yelled at the man holding the gun, "If you shoot that guy, man, that camera is going to see you," referring to a security camera at the school. Holt testified that he hoped this announcement would avert a shooting. Upon hearing Holt's warning, the man being threatened said, "Man, I don't know why he want to do this, I thought we were friends." Holt testified that both men looked over at him and he began backing up. He turned to leave and then turned back to see what was happening. Holt testified that he saw the two men struggling with one another and "then [he] heard a gunshot and the guy went down." Describing the struggle, Holt stated that "[t]he victim grabbed at the shooter, you know, as if they were wrestling for the gun." According to Holt, "[t]he gun went off one time."

Holt stated that, after the victim went down, the shooter went through the victim's pockets, then went to the vehicle and began looking for something inside the SUV, returned to the victim, then returned to the vehicle. At that point, Holt returned home and hid. He saw the shooter get in the SUV and then leave "at a high rate of speed." Holt called the police. Holt was unable to identify the shooter either to the police or at trial.

The Defendant also testified. He explained that he and the victim, Nathan Maroney, had spent the evening together partying. Maroney provided their transportation with his SUV. On their way home, they stopped and the Defendant purchased some marijuana for Maroney. The Defendant got back in the SUV and began removing some of the marijuana for himself, a portion that he described as a bonus from the seller for bringing the seller a new customer. According to the Defendant, Maroney viewed the Defendant's action as a theft and pulled a gun on the Defendant. Maroney continued driving the SUV "real slow." The Defendant saw three persons in the vicinity and decided that Maroney would not shoot him in front of witnesses, so the Defendant jumped out of the SUV.

The Defendant testified that Maroney slammed on the brakes, put the SUV into park, and got out of the vehicle with the gun. According to the Defendant,

2

The truck was still running, the lights was on, and [Maroney] was standing in the back of the truck, and he was telling me to come here. And I was like, no – well, he was actually telling me to get back in the truck. And I was like, "Man, look, I ain't getting back in that truck. I'm straight from here; I'll walk. Just let me get my clothes out your trunk, and I'll walk. My momma stay right around the corner, and I take it from here."

The Defendant stated that he and Maroney were not yelling at each other "at this point."

The Defendant testified that Maroney then "walked up on" him with the gun and "stretched his arm out." The Defendant stated that, at that point, he "slapped the gun out [of Maroney's] hand." The two men then began fighting. The Defendant explained that he grabbed the gun, which had slid a short distance away. Specifically, the Defendant testified,

I grabbed the gun. Somehow I get control. Because when–like I'm right here. The gun maybe slid to like where that garbage can is right there. One of these jurors can see it right there. It slid over there to where I am to where the garbage can at. . . . And we, you know, fighting all the way over here, and I ended up getting it.[1]

The Defendant hit Maroney in the head with the gun in an attempt to "scare him away." Maroney kept telling the Defendant to give him the gun. The Defendant cocked the gun, pointed it at Maroney, and heard a voice call out, "Hey, man, you'[a]ll stop that; it's a camera in front of that school." The Defendant testified that this announcement caught his "undivided attention" and when he looked toward the voice, Maroney "grabbed the gun." As the Defendant struggled to keep the gun, it discharged.

According to the Defendant, Maroney then "kind of kneeled down" and fell back. Maroney's eyes remained open. The Defendant became afraid that Maroney had been shot, but he did not see any blood. The Defendant stated that he searched Maroney to see if there was a gunshot wound, but did not see one.[2] The Defendant panicked, jumped in Maroney's SUV, and drove off. About a block away, the Defendant threw the gun out the window. He continued on a short distance to his girlfriend's house, where he parked the SUV and spent the night. The Defendant insisted that he did not reach into Maroney's pockets, did not take anything from him, and did not touch him other than to determine whether he had been shot.

---

[1]This testimony provided the jurors with a visual description of how much distance the Defendant had to traverse in order to possess the gun. It gives an appellate court very little from which to draw any conclusions, however. We remind attorneys and trial courts that such testimony should be clarified for potential appellate review.

[2]One of the police officers who responded to the scene testified that "when [they] were initially looking at the body, [they] didn't see any apparent fatal wound." It was not until just before the victim's body was moved that they discovered "a small wound on the upper left chest." The medical testimony at trial established that the victim died "due to a gunshot wound of the chest and abdomen which involved major blood vessels producing bleeding and death."

After his arrest, the Defendant was charged with premeditated murder, murder in the perpetration of a felony, especially aggravated robbery, and unlawful possession of a handgun by a convicted felon. The Defendant contended at trial that the shooting was accidental. Defense counsel told the trial court specifically that he was not asking that the jury be instructed on self-defense.[3] Defense counsel also did not request a charge on duress. The jury acquitted the Defendant of all charges other than unlawful possession of a handgun by a felon. In his motion for new trial, the Defendant challenged only the sufficiency of the evidence. On direct appeal, the Defendant acknowledged his failure to raise previously any issue regarding the jury instructions but asked the Court of Criminal Appeals to recognize as plain error the trial court's failure to charge the jury on the defense of duress. The Court of Criminal Appeals concluded that the Defendant's argument had merit and granted a new trial.

The State applied to this Court for, and the Court granted, permission to appeal. The State argues that the Court of Criminal Appeals erred in finding plain error. Its position is that first, the evidence at trial did not support a duress instruction, and second, even if it did, not all of the factors necessary for the application of plain-error review are satisfied in this case.

The Defendant continues to allege that the trial court committed plain error by failing to instruct the jury on the defense of duress. He asserts that the evidence at trial was sufficient to fairly raise the defense of duress; therefore, the trial court should have submitted the defense to the jury and instructed that the prosecution was bound to prove beyond a reasonable doubt that the defense did not apply. Failure to do so, he alleges, denied him his constitutional right to trial by jury. Because we find that the Defendant has failed to establish the prerequisites necessary to a finding of plain error, we reverse the judgment of the Court of Criminal Appeals and reinstate the trial court's judgment of conviction on the single charge.

## STANDARD OF REVIEW

This case requires us to determine whether the trial court committed plain error in failing to charge the jury with a theory of defense. As this Court has observed recently, "issues concerning incomplete [jury] instructions are deemed waived in the absence of an objection or special request." State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006) (citing State v. Cravens, 764 S.W.2d 754, 757 (Tenn. 1989)); see also State v. Haynes, 720 S.W.2d 76, 85 (Tenn. Crim. App. 1986) (recognizing that "alleged omissions in the charge must be called to the trial judge's attention at trial or be regarded as waived"); Tenn. R. App. P. 3(e). It is undisputed that the Defendant's assertion of error regarding the jury instructions in this case was not raised at trial or in his motion for new trial. Accordingly, we are limited to reviewing the Defendant's assertion of error under the "plain error" doctrine. See Tenn. R. Crim. P. 52(b).

---

[3]The Defendant's request that the jury not be charged on self-defense was consistent with his theory that the victim was shot accidentally rather than through a deliberate act of the Defendant defending himself. See generally Tenn. Code Ann. § 39-11-611 (1997) (setting forth the provisions of self-defense).

## ANALYSIS

## I. Plain Error

Generally, appellate review is limited to issues that are (a) preserved for review in the trial court; (b) included in the motion for a new trial after a jury verdict; or (c) presented as an issue on appeal. See Tenn. R. App. P. 3(e), 13(b), 27(a)(4), 36(a); State v. Yoreck 133 S.W.3d 606, 610-11 (Tenn. 2004). Under Rule 13(b) of the Tennessee Rules of Appellate Procedure and Rule 52(b) of the Tennessee Rules of Criminal Procedure, however, appellate courts may, in the exercise of their discretionary authority, consider issues not otherwise preserved for review.

Rule 13(b) of the Tennessee Rules of Appellate Procedure provides as follows:

> Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

Tenn. R. App. P. 13(b). Rule 52(b) of the Tennessee Rules of Criminal Procedure provides as follows: "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. Crim. P. 52(b).

Rule 52(b), a restatement of common law, contemplates that any consideration of a "plain error" rests within the discretion of the court. United States v. Olano, 507 U.S. 725, 731-32 (1993) (discussing Federal Rule of Criminal Procedure 52). The Advisory Commission Comments to Tennessee Rule of Criminal Procedure 52 provide that "[p]lain error may, not must, be noticed by the appellate court, even where substantial justice is involved." Tenn. R. Crim. P. 52(b), Advisory Comm'n Comments. In Olano, the United States Supreme Court described the word "plain" as synonymous with "clear" or "obvious," affecting a "substantial right." Olano, 507 U.S. at 734. Traditionally, courts have ruled that the nature of the right affected must be so fundamental as to reflect upon "the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (citation and internal quotation marks omitted); see also State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983).

In State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994), the Court of Criminal Appeals performed an extensive analysis of the plain-error doctrine, and, after a careful consideration of the state and federal cases addressing this issue, established the following five factors for determining whether an error in the absence of an objection qualifies as "plain":

5

a) the record must clearly establish what occurred in the trial court;
b) a clear and unequivocal rule of law must have been breached;
c) a substantial right of the accused must have been adversely affected;
d) the accused did not waive the issue for tactical reasons; and
e) consideration of the error is "necessary to do substantial justice."

Id. at 642 (footnotes omitted).

In State v. Smith, this Court formally adopted the Adkisson test as "a clear and meaningful standard for considering whether a trial error rises to the level of plain error in the absence of an objection." 24 S.W.3d 274, 282-83 (Tenn. 2000). Our Court specifically ruled that the record must establish all of the five factors as present for a declaration of plain error. Id.

The Advisory Commission Comments to Tennessee Rule of Appellate Procedure 13(b) suggest that the discretionary authority for the declaration of plain error "be sparingly exercised." Tenn. R. App. P. 13(b), Advisory Comm'n Comments. Moreover, an error "may be so plain as to be reviewable . . . , yet the error may be harmless and therefore not justify a reversal." United States v. Lopez, 575 F.2d 681, 685 (9th Cir. 1978); see Adkisson, 899 S.W.2d at 642. The magnitude of the error must have been so significant "'that it probably changed the outcome of the trial.'" Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)); see also United States v. Douglas, 818 F.2d 1317, 1320 (7th Cir. 1987).

It is the accused's burden to persuade an appellate court that the trial court committed plain error. See Olano, 507 U.S. at 734. Further, our complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. Smith, 24 S.W.3d at 283.

In reviewing the Defendant's claim of plain error, the Court of Criminal Appeals first concluded that "the record is fairly clear as to what happened in the trial court," thus satisfying the first Adkisson factor. The court based this finding solely on the fact that the trial court's written charge to the jury contains no instruction on any specific defense.[4] While the Court of Criminal Appeals did not expressly state so, it implicitly found that the second and third Adkisson factors, (a clear and unequivocal rule of law was breached, and a substantial right of the accused was adversely affected), were satisfied because it determined that the defendant's trial testimony fairly raised the defense of duress, and therefore the failure to instruct the defense violated his right to trial by jury. The court concluded that "consideration of the issue is necessary to do substantial justice" (the fifth Adkisson factor). In reaching this conclusion, the Court of Criminal Appeals took into consideration the jury's decision to acquit the Defendant of the murder and robbery charges, which, in the view of the court, accredited the Defendant's theory of defense. Due to omissions of key parts of the record and the resulting uncertainties as to whether the failure to request a duress instruction was a tactical

---

[4]While the trial court's charge as read to the jury was not transcribed, the written charge is contained within the technical record as required by Tennessee Rule of Criminal Procedure 30(c). We note that an appellate court's review of issues regarding jury instructions is facilitated by a transcript of the actual charge as delivered orally by the trial judge.

decision on the part of defense counsel, we hold that the Court of Criminal Appeals erred in concluding that considerations of "substantial justice" entitle the Defendant to a new trial on the weapons charge.

## II. Duress

The statutory defense of duress is codified in our criminal code as a "general defense." See Tenn. Code Ann. § 39-11-504 (1997). Since it is not an affirmative defense, a defendant need not prove duress by a preponderance of the evidence in order to merit a jury instruction. State v. Culp, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994). Rather, if admissible evidence fairly raises its applicability, the trial court is required to submit the defense to the jury. Id.; see also Tenn. Code Ann. § 39-11-203(c) (1997). To determine if a defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant, including all reasonable inferences that may be drawn therefrom. State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998). Once proof of a defense is sufficient to merit a jury instruction, the burden shifts to the prosecution to "prove beyond a reasonable doubt that the defense does not apply." Tenn. Code Ann. § 39-11-203 Sentencing Comm'n Comments (1997); see also Culp, 900 S.W.2d at 710. If the jury retains any reasonable doubt about the applicability of the defense, it must acquit the accused of the relevant charge. See Tenn. Code Ann. § 39-11-203(d) (1997).

Our criminal code provides that the general defense of duress is a defense to prosecution

> where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the [criminal] act [being prosecuted] is not done. The threatened harm must be continuous throughout the time the [criminal] act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the [criminal] conduct.

Tenn. Code Ann. § 39-11-504(a) (1997). The defense of duress is not available "to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion." Id. at (b). The Sentencing Commission Comments to section 504 advise that "[t]his rare defense is present when a defendant commits an offense because another person threatens death or serious bodily injury if the offense is not committed."[5] The

---

[5]A closely related defense is that of "necessity" which is codified at Tennessee Code Annotated section 39-11-609 as a "justification." Necessity is a defense to prosecution where the defendant reasonably believed his or her criminal conduct to have been "immediately necessary to avoid imminent harm," and where the "desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness." Tenn. Code Ann. § 39-11-609 (2006). Our Court of Criminal Appeals has recognized the common law distinction between the defense of duress and the defense of necessity:

7

Comments further point out that, in order for the defense of duress to be available, "there must be no reasonable opportunity to escape the compulsion without committing an offense." Tenn. Code Ann. § 39-11-504 Sentencing Comm'n Comments; see also State v. Robinson, 622 S.W.2d 62, 73 (Tenn. Crim. App. 1981).

### III. Failure to Instruct on Duress as Plain Error

In this case, the criminal act the Defendant contends he committed under duress was his taking possession of the handgun during his struggle with the victim.[6] After examining the facts and circumstances of this case, we concur that the evidence–in particular the Defendant's own testimony–may have been sufficient to warrant a duress instruction. Nevertheless, under the unique facts and circumstances of this case, we conclude that the trial court's failure to instruct the jury on the defense of duress with respect to the weapons charge was not an error so egregious as to require the Defendant be afforded a new trial in order to "do substantial justice."

Our primary concern is the absence of any indication in the appellate record that duress was a theory of the defense. We note that neither the opening statements nor the closing arguments are included in the record on appeal. These might have provided more insight into the theory of the defense. It is the responsibility of the party raising an issue on appeal (in this case, the Defendant), to furnish the appellate court with a record that will enable that court to decide the issues raised. Tenn. R. App. Proc. 24; State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999).

---

"While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity."

State v. Green, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998) (quoting United States v. Bailey, 444 U.S. 394, 409-10 (1980)); see also State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) ("Necessity has traditionally been used appropriately when the extreme situation is brought on by something other than a human act."). Modern cases, however, have tended to blur this traditional distinction between duress and necessity. Bailey, 444 U.S. at 410; see, e.g., State v. Green, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995) (stating that claim of alleged accomplice that he participated in aggravated burglary due to threat by defendant to harm his son would have raised defenses of duress and necessity); Culp, 900 S.W.2d at 709 (stating that defense raised by prisoner's assertion that he escaped from jail due to threats of harm by sheriff and deputies was more akin to necessity than duress). In Tennessee, the statutory defenses of duress and necessity are not limited to any particular source of harm, following the Model Penal Code in this respect. See Model Penal Code §§ 2.09, 3.02 (categorizing duress as a limitation on the defendant's ability to act voluntarily and necessity as a justification defense). In this case, the Defendant has not challenged the trial court's failure to instruct the jury on the defense of necessity. Therefore, we need not determine the applicability of necessity as a defense to the charge of unlawful possession of a handgun by a convicted felon. Cf. Culp, 900 S.W.2d at 710 (holding that necessity and duress are available as defenses to escape).

[6]Our criminal code provides that a person who has been "convicted of a felony involving the use or attempted use of force, violence or a deadly weapon" commits a felony if the person thereafter possesses a handgun. Tenn. Code Ann. § 39-17-1307(b)(1)(A) (1997). The State and the Defendant stipulated at trial that the Defendant had been convicted in 2001 of "Aggravated Assault, a felony involving the use of a deadly weapon."

8

From the record provided, it is clear that the defense focused on the more serious crimes charged: premeditated murder, felony murder, and especially aggravated robbery. The tactical theory of the defense was that the victim was shot accidentally, and the Defendant did not rob him. In fact, when the trial court specifically asked whether he desired an instruction on self-defense, a defense closely akin to duress,[7] the Defendant expressly declined such an instruction. Instead, the Defendant concentrated on a theory of "accident," which, apparently, the jury was willing to adopt as to the murder and robbery offenses. Not only did the Defendant not request a jury instruction on duress, but there is no indication in the record provided that such a theory was even contemplated. In fact, the Defendant's express rejection of an instruction on self-defense suggests otherwise.

As set forth above, the test for plain error includes five prerequisites, each of which must be satisfied before the trial court's judgment may be overturned. The party advocating plain error bears the burden of establishing such claims. Olano, 507 U.S. at 734. A reviewing court must therefore undertake a close and careful analysis of each prerequisite in turn before determining that a plain error has been committed. Only when the reviewing court has satisfied itself that all five prerequisites have been met should it consider granting relief on the basis of "plain error."

Where a defendant fails to carry his burden of establishing even one of the five plain error prerequisites, the reviewing court may discontinue its analysis and reject the defendant's claim of plain error. In this case, the Defendant failed to submit a record that included opening statements and closing arguments. By this omission, he has clouded the issue of whether the failure to request a duress instruction was a tactical decision. It is difficult to fault the trial court and find "plain error" for not charging duress when, based on the record provided, it was never discussed as a theory of the defense, and the Defendant affirmatively waived an instruction on self-defense which, under the facts of this case, was an analogous defense to duress. We disagree with the Court of Criminal Appeals that the jury's apparent accreditation of the defendant's accident defense on the murder and robbery charges necessarily indicates that the jury would likewise have accepted a duress defense on the weapon charge. We therefore conclude that the Defendant has failed to carry his burden of establishing all five Adkisson factors, and thus, that consideration of the alleged error is not necessary to do substantial justice. Tenn. R. Crim. Proc. 52(b). For that reason, the claim that the trial court erred in failing to instruct on duress on the weapons charge should not be noticed as plain error and the Defendant is not entitled to relief.

---

[7]Both duress and self-defense are "defenses," as defined by Tennessee Code Annotated section 39-11-203 (1997), when the proof fairly raises an issue concerning whether the defendant was justified in acting in response to impending harm or unlawful force which involved an imminent danger of death or serious bodily injury. See Tenn. Code Ann. §§ 39-11-504 (1997) (duress) & 39-11-611 (1997) (self-defense). A close parsing of the statute setting forth the defense of duress reveals that it encompasses four elements. In the context of this case, those four elements are (1) that the victim threatened the Defendant with a drawn gun so as to cause the Defendant to fear his own death or serious bodily injury if the Defendant did not obtain possession of the gun; (2) the victim's threat of shooting the Defendant was continuous throughout the Defendant's possession of the gun; (3) the Defendant could not safely withdraw from the victim's threat of shooting him; and (4) the desirability and urgency of the Defendant taking possession of the gun in order to avoid being shot by the victim clearly outweighed the harm sought to be avoided by the law proscribing convicted felons from possessing guns. Tenn. Code Ann. § 39-11-504 (1997).

## CONCLUSION

We reverse the judgment of the Court of Criminal Appeals and reinstate the trial court's judgment of conviction for one count of unlawful possession of a weapon by a convicted felon. It appearing that the Defendant, Tevias Bledsoe, is indigent, the costs of this cause are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE