IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2008

## STATE OF TENNESSEE v. QUAMINE JONES

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-00391     W. Otis Higgs, Jr., Judge**

―――――――――

**No. W2007-01111-CCA-R3-CD  - Filed November 21, 2008**

―――――――――

The defendant, Quamine Jones, was convicted of first degree premeditated murder and sentenced to life imprisonment.  He argues that the evidence of premeditation was insufficient to support his conviction for first degree murder, the indictment should have been dismissed because he was denied a preliminary hearing, the trial court erred in admitting into evidence a photograph of the victim and testimony of a witness regarding his reluctance to testify, and the State withheld exculpatory evidence.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Charles R. Curbo (on appeal) and Brett B. Stein (at trial), Memphis, Tennessee, for the appellant, Quamine Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak and Anita Spinetta, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

At trial, Ronald Crabtree, the brother-in-law of the victim, Terry Alberson, identified a photograph of the victim taken sometime during his life, and the State introduced this photograph into evidence.

Roy Benson, a truck driver, testified that on November 7, 2005, a neighbor drove him to the Circle K truck stop at Shelby Drive and Lamar Avenue in Memphis.  His load was not yet ready, so

he sat in the cab of his truck, which was parked in the parking lot of the truck stop, and began filling out paperwork. He looked to his left and noticed a white passenger truck containing the victim and a woman pull up beside his truck. Seconds later, an eighteen-wheel truck pulled in behind Benson's truck. Benson saw the defendant get out of the eighteen-wheel truck and heard him tell the victim to give him his money. The victim told the defendant that he did not have his money, and the defendant told the victim to give him the keys to his truck. The defendant reached into the victim's truck and unsuccessfully attempted to take the keys, then told a woman inside his eighteen-wheel truck to bring his gun to him. After hesitating briefly, the woman brought the defendant a rifle with a scope. The defendant aimed the gun at the victim and instructed him to give him his money or the keys to the truck. The defendant fired one shot into the ground. He continued to argue with the victim for several minutes, then fired a second shot, which hit the victim in the chest. The defendant retreated to his truck and drove away. Benson walked over to the victim, saw that he was dead, got into his truck, and drove to Florida.

Benson stated that he was contacted by the police several weeks after the shooting. He said that he initially refused to speak with the police because he had testified in the 1970's as a witness to a crime, and later had been stabbed by the defendant in the case.

Jennifer Woods, the victim's girlfriend, testified that she was with the victim when he parked at the Circle K truck stop on November 7, 2005. She said that the defendant walked up to the victim's truck, attempted to grab the keys, and demanded twenty dollars that the victim owed him. She knew the defendant because she and the victim had previously purchased crack cocaine from him. The victim told the defendant that he did not have his money, and they argued for several minutes before the defendant told the woman in his truck to bring him his gun. The defendant fired a shot into the side of the car, then pointed the gun at the victim. Woods moved in front of the victim because she did not want the defendant to shoot him. The victim told her that it was going to be "okay" and pushed her away. The defendant then shot the victim, who went limp and turned blue. The defendant then returned to his truck and drove off.

On cross-examination, Woods acknowledged that she had smoked "a hit" of crack cocaine about an hour before the shooting. She testified that she had smoked "[m]aybe five or six" additional "hits" of crack cocaine in the twenty-four hours preceding the shooting. On redirect examination, she testified that she identified the defendant from a photographic lineup shown to her by the police the day after the shooting.

Officer Damion Dodson of the Memphis Police Department testified that he was called to the scene of the shooting at about 5:00 p.m. and secured the scene until his lieutenant arrived. Officer Brian Vanburen identified photographs taken and physical evidence recovered from the crime scene.

Detective William P. Merritt testified that the Memphis Police Department developed the defendant as a suspect in the victim's death after interviewing witnesses and examining the

defendant's cellular telephone, which was found at the scene. He testified that other witnesses he interviewed at the time of the shooting were presently unavailable.

Dr. Karen Chancellor, Chief Medical Examiner for Memphis and Shelby County, performed an autopsy on the victim and determined that he died of a gunshot wound to the chest.

The defendant elected not to testify or present other proof. Following deliberations, the jury found the defendant guilty of first degree premeditated murder.

## ANALYSIS

### I. Sufficiency of the Evidence

As his first issue, the defendant contends that the evidence is insufficient to support his conviction for first degree premeditated murder because the State did not introduce any evidence of premeditation. He asserts that "[t]he non-impeached evidence shows this crime was the crime of passion and the [d]efendant did not exercise reflection and judgment, even taken in the light most favorable to the State." He argues, therefore, that the evidence supports only a conviction for voluntary manslaughter. The State responds that the jury could have found premeditation from the proof, which showed that the defendant had a motive for killing the victim, procured a weapon to commit the offense, and did not render aid or assistance after shooting the victim.

Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In

> the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A premeditated and intentional killing of another is first degree murder. Tenn. Code Ann. § 39-13-202(a) (2006). Premeditation means that the intent to kill must have been formed prior to the act itself; a premeditated act is one done after the exercise of reflection and judgment. **Id.** § 39-13-202(d). The presence of premeditation is a question of fact for the jury to determine based upon a consideration of all the evidence. See State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000).

Premeditation may be inferred from circumstantial evidence surrounding the crime, including the manner and circumstances of the killing. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Addison, 973 S.W.2d 260, 265 (Tenn. Crim. App. 1997). Facts from which the jury may infer premeditation include the use of a deadly weapon on an unarmed victim; the defendant's shooting of the victim after he had turned to retreat or escape; the lack of provocation on the part of the victim; the defendant's declarations of his intent to kill; the defendant's failure to render aid to the victim; the establishment of a motive for the killing; the particular cruelty of the killing; the defendant's procurement of a weapon, preparations to conceal the crime before the crime is committed, and destruction or secretion of evidence of the killing; and a defendant's calmness immediately after the killing. State v. Thacker, 164 S.W.3d 208, 222 (Tenn. 2005); State v. Leach, 148 S.W.3d 42, 54 (Tenn. 2004); State v. Lewis, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000) (citations omitted). The circumstantial evidence of premeditation must, however, be "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971).

The proof presented at trial showed that the defendant confronted the victim in the parking lot of a truck stop. The defendant argued with the victim over a debt and attempted to take the keys to the victim's truck. After several minutes, the defendant asked an acquaintance to bring him a rifle and used it first to fire a shot into the victim's truck before shooting the victim in the chest. The defendant then drove away without attempting to render aid or assistance. This proof established that the defendant had a motive for the killing, used a deadly weapon against an unarmed victim, and did not render aid to the victim. From this evidence, a rational jury could find that the defendant premeditated the killing. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction for first degree premeditated murder.

## II. Failure to Dismiss Indictment and Grant Preliminary Hearing

The defendant next contends that the trial court erred in not dismissing the indictment against him. As we understand, he argues that he was entitled to a preliminary hearing after being arrested pursuant to a warrant and to have the indictment, which was returned after his arrest but before the preliminary hearing, dismissed. The defendant acknowledges that he has waived this issue by omitting it from his motion for new trial, but argues that we should evaluate the claim under the plain error doctrine. The State responds that the defendant has not shown that plain error analysis is warranted.

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. Crim. P. 52(b). In State v. Smith, 24 S.W.3d 274 (Tenn. 2000), our supreme court adopted the test for plain error first announced by this court in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994). In order for us to find plain error, Adkisson requires that

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (quoting Adkisson, 899 S.W.2d at 641-42).

A court's discretion to notice plain error is to be "sparingly exercised." State v. Bledsoe, 226 S.W.3d 349, 354 (Tenn. 2007). To justify reversal, the magnitude of the error must be so significant that it probably changed the outcome of the trial. Id. The accused has the burden of persuading an appellate court that the trial court committed plain error. Id. at 355. Consideration of all five factors is unnecessary when it is clear from the record that at least one of them cannot be satisfied. Id.

Any defendant arrested prior to indictment or presentment for a misdemeanor or felony is entitled to a preliminary hearing upon request. Tenn. R. Crim. P. 5(e). If the defendant is indicted while the preliminary hearing is being continued or at any time before he or she has been afforded a preliminary hearing on a warrant, the defendant may dismiss the indictment on motion. Id. No such motion to dismiss shall be granted after more than thirty days from the defendant's arrest. Id. The thirty-day limitation applies only when all parties have acted in good faith and in compliance with the rule. Moore v. State, 578 S.W.2d 78, 82 (Tenn. 1979).

The State argues, and we agree, that plain error analysis of this claim is inappropriate because the record does not clearly establish what occurred in the trial court regarding this claim and the defendant has not shown that a clear and unequivocal rule of law has been breached. The record reveals that the defendant was indicted on January 19, 2006, and moved to dismiss the indictment

on March 15, 2006.  However, the record does not disclose when the defendant was arrested.[1]  Thus, we are unable to determine whether the defendant moved to dismiss the indictment within thirty days of his arrest.  If we assume that the defendant was arrested on or before January 19, 2006, then he has failed to comply with the thirty-day limitation for filing a motion to dismiss the indictment.[2]  He has not alleged or shown that this limitation should be tolled because of bad faith on the part of the State.  It is the duty of the appellant to prepare a fair, accurate, and complete record of what transpired in the trial court.  Tenn. R. App. P. 24(b).  Because the defendant has not established the existence of at least two of the factors for plain error review, we decline to consider the merits of this issue.[3]

## III.  Admission of Photograph of Victim

The defendant next contends  that the trial court erred in admitting a photograph taken of the victim during his life.  He argues that the photograph was irrelevant to any disputed issue at trial and, further, that any probative value in the photograph was outweighed by its prejudicial effect on the jury, particularly in light of the fact that the victim's mother began to cry in the courtroom after the photograph was introduced. The State argues that the photograph was probative to establish that the victim was alive and well before the shooting and that its prejudicial effect was minimal.   The State contends, therefore, that the trial court acted within its discretion in admitting the photograph.

The admissibility of photographs generally lies within the sound discretion of the trial court and will not be overturned on appeal absent a showing that the trial court abused its discretion.  State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978).  "Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases."  State v. Morris, 24 S.W.3d 788, 810 (Tenn. 2000).  In determining whether a photograph is admissible, the trial court must first determine whether it is relevant to a matter at issue in the case.  See  Tenn. R. Evid. 401;  State v. Vann, 976 S.W.2d 93, 102 (Tenn. 1998); Banks, 564 S.W.2d at 949.  The court must next consider whether the probative value of the photograph is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."  Tenn. R. Evid. 403.

We agree with the State that the photograph was relevant to establish the identity of the victim as the man the defendant killed and that its probative value outweighed any prejudicial effect. The photograph at issue merely shows the victim's face as he appeared while still alive.

---

[1]We note that, according to the judgment, he received pretrial credits from February 3, 2006, until May 23, 2007.  Thus, he did not begin to receive pretrial jail credits until two weeks after he was indicted.

[2]Conversely, if we assume that the defendant was arrested at some time after January 19, 2006, then he was indicted before he was arrested and was not entitled by Rule 5(e) to a preliminary hearing as of right.

[3]The defendant argues on appeal that he was arrested in Houston, Texas, pursuant to a warrant from the Shelby County General Sessions Court and extradited back to Memphis in January 2006.  However, there is no proof in the record of this, only the arguments of counsel at a hearing on the motion to dismiss the indictment.  Thus, according to the chronology we have set out, the defendant was indicted prior to his being an inmate at the Shelby County Jail.

Furthermore, although the defendant asserts that the victim's mother began weeping upon introduction of the evidence, there is nothing in the record to support this assertion. We conclude, therefore, that the trial court did not abuse its discretion in admitting the photograph into evidence.

### IV. Benson's Testimony

The defendant next challenges the admission of the following testimony by Roy Benson, the truck driver who witnessed the shooting:

[Counsel for the State]: Okay. Did the police arrive on the scene?

[The Witness]: I guess they did, I left. I panicked and left because I didn't want to be involved.

[Counsel for the State]: And, what happened later, you were eventually contacted by the police?

[The Witness]: Yeah, the police called me and said, can I speak to Big Hand. And, I was like who is this calling me? He said, this is the police officer. You were at a scene. I said, oh, my God. He told me some girl told him that she wasn't at the scene because she got arrested. She was a prostitute. She got arrested and she said you can ask Big Hand. And, they called me and that's how I got involved.

[Counsel for the State]: And, when you got involved you came down to police headquarters and you spoke with at once, [sic] is that correct?

[The Witness]: No.

[Counsel for the State]: They came to you?

[The Witness]: They came to me.

[Counsel for the State]: And, did you sign any paperwork?

[The Witness]: No, I refused to talk to them then.

[Counsel for the State]: Why is that?

[Defense objection overruled by trial court]

[The Witness]: Well, back in '78 in my hometown, Somerville, Tennessee, this guy, like this here happened, I was at the wrong place at the wrong time but I was doing

my thing. And, this guy went to court and he got out and maybe six or seven years later I wasn't even thinking about it and he ended up cutting my stomach wide open.

[Counsel for the State]: Okay. So what you're telling the jury is you were hesitant to testify in this case?

[The Witness]: Yeah.

[Counsel for the State]: Because in the past you've testified and you've been hurt because of it.

[The Witness]: Yes, sir.

The defendant contends that this testimony was "irrelevant and/or unduly prejudicial" but offers no further argument explaining why the trial court should have excluded it. However, even assuming, arguendo, that the challenged testimony was irrelevant, we conclude that any error by the trial court in admitting the testimony was harmless, as there was ample proof of the defendant's guilt presented at trial. The State presented two eyewitnesses to the shooting, Benson and Jennifer Woods, who both testified that the defendant shot the victim after arguing with him for several minutes over a debt. It is, therefore, unlikely that the admission of the challenged testimony affected the outcome of the trial. See Tenn. R. Crim. P. 52(a) ("No conviction shall be reversed on appeal except for errors that affirmatively appear to have affected the result of the trial on the merits."). The defendant is not entitled to relief on this issue.

## V. Disclosure of Impeachment Evidence

The defendant next contends that the State failed to disclose to him that "the State's principal witness, Jennifer Woods, had obviously been offered a deal by the State since [C]lass 'C' theft charges against her were dropped after she testified at the [d]efendant's trial." He argues that this is impeachment evidence which the State had a duty to disclose. The State argues that it did not suppress impeachment evidence because the record does not show that it entered into an agreement with Woods to drop pending charges against her in exchange for her testimony.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). In order to establish a Brady violation, a defendant must show that he or she requested the information, the State suppressed the information, the information was favorable to his or her defense, and the information was material. State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). Evidence is "material" only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985). Impeachment evidence, including evidence challenging the credibility of a key prosecution witness, falls within the Brady rule. Johnson v. State, 38 S.W.3d 52, 56-57 (Tenn. 2001).

At the hearing on the defendant's motion for new trial, Jennifer Woods testified that she had asked the district attorney's office whether the State would drop charges related to a "car incident" if she testified against the defendant. After Woods testified that she told the truth at the defendant's trial, the following colloquy took place between Woods and defense counsel:

> [Defense Counsel]: And, they told you that if you did so that the car case would go away; is that correct?
>
> [The Witness]: Not in those words, but something like that.
>
> [Defense Counsel]: Something like that?
>
> [The Witness]: Uh-huh. (Affirmative response.)
>
> [Defense Counsel]: And –
>
> [The Witness]: That they could see what they could do is pretty much what it was – the way it was put.
>
> [Defense Counsel]: And, well, your understanding was that if you got up and testified against Mr. Jones that the charges against you would be dropped; is that correct?
>
> [The Witness]: I was hoping.
>
> [Defense Counsel]: That was your understanding?
>
> [The Witness]: It was never said, yes, exactly it will be dropped, but they said they would see what they can do. I had confidence it would be, but they never said.
>
> [Defense Counsel]: Is there any particular reason that you had confidence it would be?
>
> [The Witness]: Yeah, because a lot of that had a lot to do with this.

On cross-examination, Woods acknowledged that the State did not make any promises to her in exchange for her testimony but that she was "hopeful that it would be worked out."

Although Woods's testimony at the motion for new trial hearing did not establish that the State reached an actual agreement with her in exchange for her testimony, it was sufficient to show that discussions on the issue took place. Furthermore, these discussions, which can reasonably be construed to have influenced her decision to testify on the State's behalf, would have been relevant to impeach her trial testimony. We conclude, therefore, that the State improperly suppressed evidence of the discussions that took place between the prosecutor and Woods regarding the

disposition of the charges pending against her in exchange for testimony, the charges ultimately being dismissed. Nonetheless, given the overwhelming evidence against the defendant, the improperly suppressed evidence was not material in that there was not a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense. We conclude, therefore, that although the defendant has shown that he requested the information, that the State suppressed it, and that it would have been favorable to his defense, he has not shown that it was material and thus has not met his burden of establishing a Brady violation in the case.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE