IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 21, 2012 Session

# IN RE: CONSERVATORSHIP OF MAURICE M. ACREE, JR., et al., v. NANCY ACREE, et al.

**Appeal from the Circuit Court for Davidson County**
**No. 06P-1603    Hon. Walter Kurtz, Designated Judge**

**No. M2011-02699-COA-R3-CV - Filed November 20, 2012**

In this action a Petition was filed and a conservator was appointed for Dr. Maurice M. Acree, Jr., and William Acree was made a party to that proceeding. Five years after a conservator was appointed, William Acree filed a "Complaint" in that action. The Trial Court determined that a complaint could not lie in that action, and treated it as a Rule 60 Motion and denied William Acree any relief. William Acree has appealed to this Court and we affirm the Trial Court's Judgment, but modify the Judgment on the basis that the record reveals plain error which should be addressed because the trusts remain active.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as modified.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Suzette Peyton, Brentwood, and George E. Copple, Jr., Nashville, Tennessee, for the appellant, William Q. Acree.

C. Dewey Branstetter, Jr., and Stacey K. Skillman, Nashville, Tennessee, for the appellees, Nancy Acree, C. Dewey Branstetter, Jr., and Austin Catts.

# OPINION

## Background

Petitioner, Don Acree, the adult son of Dr. Maurice Acree, Jr., filed a Petition of[sic] Appointment of Conservator, stating that Dr. Acree had become mentally incapable of handling his affairs. The petitioner alleged that Dr. Acree had recently brandished a weapon against him during a visit. The Petition asked that Don and Bill Acree, Dr. Acree's sons, be named as co-conservators. The Petition disclosed that Dr. Acree has a wife, Nancy, and two adopted daughters.

The Court entered an Order Appointing Temporary Conservator, and stated that based on the limited medical evidence in the record, the Court found that it was in respondent's best interests to appoint a temporary conservator until the guardian ad litem could make a full report to the Court. The Court also ordered June P. House to obtain all records relating to the Clara Carter Acree Trust and the Maurice Mason Acree, Jr., Trust, of which respondent was trustee. June P. House was respondent's personal attorney in Nashville.

Don Acree filed various motions, and his attorney was allowed to withdraw so that Don could proceed *pro se.* The Court denied Don's motion seeking appointment of a new conservator, and denied his motion seeking appointment of an attorney ad litem for respondent because respondent already had counsel.

The conservator filed an inventory listing respondent's assets, including the assets held by the two trusts for which he was trustee. The conservator also filed a proposed Property Management Plan ("PMP"), wherein the conservator proposed that respondent and his wife's monthly living expenses be paid from the monthly income from his trusts and then from the principal of the trusts. Among other things, the conservator proposed to pay for needed renovations to the wife's home from the trust, and also to pay $1,000 per month for psychiatric treatment and medication for Don.

After the Guardian Ad Litem's report, the Court entered an Order appointing Mary Beth Boone as temporary co-conservator.

William Acree, respondent's other biological son, filed a Response and Objections to the Proposed PMP, and argued that the house in Nashville should be sold, because respondent was no longer living there and it would cost too much money to keep it up. William also argued that respondent's car should be sold because he could no longer drive. William stated that the trust records for the Clara Acree Trust should be examined, because the balance should be far greater than the $812,000 reported by the conservator, and he also

argued that the Trust should not be touched until respondent's personal assets were depleted. William also argued that the reported/proposed monthly expenses were excessive and unreasonable.

The Court entered an Order Amending PMP and Allocating Attorneys Fees, stating that it held a hearing wherein it heard the testimony of Nancy and William, statements of counsel, and the recommendations of the Guardian. The Court found that the remainder of the Clara Acree Trust would go to respondent's children after respondent's death, but the remainder of respondent's trust went to Nancy after his death for her lifetime. The Court found that both trusts allowed for support to be paid on respondent's behalf, but the respondent's trust had substantial assets and thus it was unnecessary to encroach on the Clara Acree Trust for caregiving expenses. The Court also found that all attorneys' fees and the Guardian should be paid from respondent's trust, but attorneys' fees for the sons would be paid from the Clara Acree Trust.

The Court then entered an Order Appointing Co-Conservators, and appointed Boone and House as co-conservators of the property, and Boone and Nancy co-conservators of the person. The Court approved the proposed PMP, except the Court ordered the house in Nashville to be sold, and ordered that annual gifts to the sons could be made from the Clara Acree Trust in the amount of the annual exclusion from the federal gift tax, as had been done in the past. The Court also ordered that visitation should be allowed between respondent and his sons, and ordered that the sons could have input into the choice of respondent's neurologist. The Court then entered an Order which amended the PMP such that respondent's trust would be used before the Clara Acree Trust.

The Court entered various Orders allocating attorneys' fees, and ordered that all fees were to be paid from respondent's trust except for the fees for the son's attorneys.

An Agreed Order was entered wherein the Court specifically found the conservators were appropriately serving as trustees of the trusts for which respondent used to be trustee. The Court also entered an order finding Don Acree in contempt for defaming Nancy, and later entered an Order allowing Beth Boone to spend up to $10,000 on private investigators to determine the whereabouts of Don because he was still using media/electronic outlets to malign respondent's caregivers. The Court then entered another Order expressly finding there had been no wrongdoing by the conservators or caregivers.

The Court later entered an Order reducing the attorneys' hourly rates to $125 per hour, due to the rapid depletion of the estate. Thereafter, the Court denied fees to William's attorney, finding that the attorney's activities did not benefit the ward.

The Petition in this action was originally filed on October 10, 2006. On June 30, 2011, William Acree filed a document entitled "Complaint", and named Nancy, her attorney, House, Boone, and others as defendants. The document alleged that the acting trustees were improper based on the trust documents, that the trusts, successor trustees, and remainder beneficiaries did not receive proper due process, and that the Court lacked jurisdiction over the trusts. The Complaint alleges that the prior Court orders were void for lack of personal and subject matter jurisdiction.

Catts, one of the attorneys named as a defendant by this "Complaint", filed a Motion to Dismiss, alleging the Court lacked jurisdiction over him, that venue was improper, and he argued that Tenn. Code Ann. §35-15-202 gave the Court jurisdiction over the trusts, and that Tenn. Code Ann. §35-15-704 and 706 allowed the Court to appoint a fiduciary for the trusts. Similar motions were filed by the other "defendants". The Court filed a Memorandum and Order, and found that there was no authority to file a "complaint" in litigation that had been ongoing for five years, and that there was no authority for adding new parties without Court permission. The Court thus dismissed the new parties and decided to treat the "Complaint" as a Tenn. R. Civ. P. 60 motion. The Court found that Tenn. Code Ann. §35-15-201 through 203 gave the Court authority over the trusts, and that Tenn. Code Ann. §35-15-704 allowed the Court to appoint a trustee. The Court found that Dr. Acree was trustee of the trusts at the time the conservatorship was instituted, and that the Court had jurisdiction over him and his property. The Court also found that William Acree was a party to the conservatorship proceedings and had notice of everything that went on, and that he could not raise the question of due process on behalf of another. The Court denied the Rule 60 motion.

Issues presented for review:

1.     Whether the Trial Court erred in dismissing at the pleading stage the Complaint filed as an adversary proceeding to an existing conservatorship proceeding?

2.     Whether the Trial Court erred in disallowing the filing of an Amended Complaint to the already dismissed adversary proceeding Complaint?

William argues that the Trial Court erred in dismissing his "Complaint" that was filed in the conservatorship proceeding, and that a Davidson County Local Rule allows him to file an "adversary proceeding" in an ongoing conservatorship proceeding, as here. Appellees argue that the "Complaint" violates Tenn. R. Civ. P. 3, 15, 19, and 21, and that the local rule which William seeks to rely upon does not provide authority for the filing of a complaint in an ongoing conservatorship proceeding.

The local rule which William seeks to rely on, Local Rule 39.02 of the 20th District (Davidson County) is subtitled "Special Procedures for Probate Matters", and states that "Adversary Proceedings include but are not limited to Civil Actions as defined under T.R.C.P. 2 and proceedings to remove a fiduciary, surcharge a fiduciary, probate a lost or destroyed will, determine beneficiaries, construe a will, cancel a devise, partition property for the purposes of distribution, determine pretermitted share, and for revocation of probate of a will. Other proceedings may be declared Adversary Proceedings. Adversary Proceedings shall be prepared, discovery conducted, and tried as Civil Actions pursuant to the Tennessee Rules of Civil Procedures, rules of Evidence and these Local Rules." Rule 39.09 states that "A party may initiate an Adversary Proceeding/Civil Action by the filing of a petition or complaint pursuant to T.R.C.P. 3, . . .. The caption of pleadings concerning Adversary Proceedings/Civil Actions arising out of an estate pending in Probate Court, shall include the name of the original estate and that of the first petitioner and first respondent in the related Adversary Proceeding. The Court may assign a derivative docket number to separately identify the Adversary Proceeding/Civil Action."

While this local rule does state that one can file an "adversary proceeding" in an ongoing matter in probate Court, the examples given in the rule (i.e. cancel a devise, partition property for the purposes of distribution, determine pretermitted share, etc.) seem to apply to the types of actions that would be filed regarding an estate that was being probated, which, of course, does not typically start out as an adversary proceeding. A conservatorship proceeding, however, is an adversary proceeding from the outset because it is filed by one party seeking to establish that a conservatorship is needed for the respondent, and the respondent must be properly served with process and allowed to respond, have a hearing, etc., as was done in this case. *See* Tenn. Code Ann. §34-1-101 and 34-3-104 *et seq*. William was also given notice of the proceedings as required by the conservatorship statute, and has participated in the proceedings from the beginning. Tenn. Code Ann. §34-1-106.

This local rule does not give William the right, five years into this adversary litigation, to file a new "Complaint" and name additional defendants without the Court's permission. He has filed various motions in this case, and has specifically filed motions seeking amendment of prior orders entered in these proceedings. As the Trial Court instructed, the filing of a proper motion would be the vehicle necessary to raise issues regarding alleged errors in the Court's prior orders in these proceedings, rather than a "Complaint" seeking to allegedly state a new "cause of action" against existing and new parties. There is no authority for filing an "adversary proceeding" in an ongoing adversary proceeding. Further, there is nothing in the record to show that William relied upon the local rule at the Trial level.

William also argues that it was improper for the Trial Court to treat his "Complaint" as a Tenn. R. Civ. P. 60 motion, because the prior orders were not final. This argument, of

course, begs the question because if the orders were not final, they would be subject to a motion seeking revision/alteration. To determine finality, the Court must look to whether the order is temporary and whether any review is pending in the Trial Court. This Court has previously ruled that an order appointing a conservator is final even though it is subject to modification by the Court pursuant to statute, because it is not temporary and no review is pending. *In re Estate of Rinehart*, 363 S.W.3d 186 (Tenn. Ct. App. 2011). The same review could be applied to orders awarding attorney's fees, or any other orders entered in a conservatorship case, which often spans many years. The Supreme Court has previously explained that orders construing a will, rejecting a will, or other such orders filed in an estate are final orders subject to appeal, as it would present "substantial burdens" on the courts and litigants to make such appeals await the closing of an estate, as distributed assets could be difficult to recover. *See In re Estate of Ridley*, 270 S.W.3d 37 (Tenn. 2008).

In this case, the orders that William sought to amend were indeed final orders, i.e., the orders appointing the permanent conservators and naming them substitute trustees, and the orders regarding attorneys' fees. William had, in fact, filed motions seeking to amend some of these same types of orders in the past. It is disingenuous that he now admittedly seeks to collaterally attack those orders on the one hand, but then claim the orders are not final, having filed no motions pursuant to Rule 54 or otherwise as if he truly believes the orders are interlocutory and modifiable.

Considering the substance of the "Complaint"-turned-motion, the argument seems to be that the orders are void because 1) the Court had no personal jurisdiction and 2) the Court had no subject matter jurisdiction. William argues that the Trial Court erred in entering orders regarding these trusts because there was no due process as the trusts, as entities, were not served. Thus the Court lacked personal jurisdiction over the same.[1] This argument ignores the fact that the Tennessee Uniform Trust Code, codified at Tenn. Code Ann. §35-15-101 *et seq*., states that trustees who accept the trusteeship of a trust with its principal place of administration in Tennessee submit to the personal jurisdiction of the Tennessee Courts, as do any beneficiaries who accept a distribution from the trust. Tenn. Code Ann. §35-15-202. The statute goes on to state that the chancery court, who has probate jurisdiction, has subject matter jurisdiction over trusts. Tenn. Code Ann. §35-15-203. The statute also explains that the court has the power to intervene in administration of a trust if its jurisdiction is invoked by any interested person. Tenn. Code Ann. §35-15-201. In this case the Trial Court had jurisdiction over the trusts in this case, both personal and subject matter. As such, the Court's orders are not void.

---

[1] Of course, Dr. Acree was trustee of both trusts at the time the conservatorship proceeding was filed, and there is no question that he was properly served with process.

Finally, William argues that the Trial Court erred in denying him leave to file an amendment to his complaint. William admits in his brief, however, that the amendment was "essentially the same" as the original complaint. This Court has previously ruled that an amendment is futile if allowing it would not change the outcome. *Welch v. Thuan*, 882 S.W.2d 792 (Tenn. Ct. App. 1994). The proposed amendment would not have changed the outcome in this case as it included the same information that the Trial Court ruled upon, and the Trial Court did not abuse its discretion in denying the filing of an Amended Complaint.

The record before us reveals plain errors in the administration of these trusts which should be addressed because the trusts remain active.

> Acknowledging her failure to object to the disputed evidence or to the trial court's decision to conduct the trial on the merits, Pearson asks this Court to nevertheless consider these issues on appeal under the "plain error" doctrine. Under Rule 103(d) of the Tennessee Rules of Evidence and Rule 36(b) of the Tennessee Rules of Appellate Procedure, this Court may "take notice of 'plain errors' that were not raised in the proceeding below." *Smith,* 24 S.W.3d at 282; *see* Tenn. R. Evid. 103(d); Tenn. R. App. P. 36(b). Any consideration of the "plain error" lies within the discretion of the appellate court. *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007.) Moreover, Rules 13(b) and 36(a) of the Tennessee Rules of Appellate Procedure give the appellate court the discretion to consider issues that have not been properly presented, in order to achieve fairness and justice. *Heatherly v. Merrimack Mut. Fire Ins. Co.,* 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000).

> *Pearson v. Ross*, 2011 WL 6916194 (Tenn. Ct. App. Dec. 28, 2011).

The trust established by Dr. Acree was within his power to modify up to the time of his incapacity, and he also had the power to delegate power to other trustees, thus the Court was able to exercise that power and appoint the conservators as trustees. The Clara Acree Trust, however, does name successor trustees should Dr. Acree be unwilling or unable to serve, i.e., Cynthia Acree Marshall, then also states "if at any time there is no trustee serving, a successor trustee or co-trustee shall be appointed by the beneficiaries of the trust estate." As such, pursuant to the trust document, before he became incompetent the ward would not have had the power to amend the trust document nor appoint a successor trustee to act in his stead, and upon his inability to serve, the trusteeship should have automatically passed to Cynthia. *See, In re: Conservatorship of Didier*, 784 N.W.2d 486 (S.D. 2010). *Also see,* Ten. Code Ann. §34-3-107.

Accordingly, the terms of the trust should prevail pursuant to the Tennessee statutory provisions, and the Trial Court is directed to add Cynthia Acree Marshall, if competent and

it is in the best interest of the beneficiaries, even if the Court determines that it needs to appoint an additional trustee to  serve with her pursuant to the statute.

There is no provision in either trust that would allow for the payment of attorneys' fees for Nancy, nor for William.

Similarly, the conservatorship statute allows the Court to establish an amount of support to be paid to the spouse, but there is no provision allowing for attorney's fees to be paid from the conservatorship for the ward's spouse, only attorney's fees for the ward's attorney, the guardian ad litem, and the petitioner's attorney are addressed in the statute. Tenn. Code Ann. §34-3-109. When approving expenses to be paid from the ward's property, the Court is required to determine whether the expenses are reasonable and whether they protected/benefitted the ward or his property, or if payment is in the ward's best interests. Tenn. Code Ann. §34-1-113.  It appears that the Court's allowance of attorneys' fees for Nancy and William were improper under the trust documents, as were any payments for Nancy's support that invaded the trust principal (although it would be difficult to determine this given the expenses that are being paid for the ward's benefit).

The cause is remanded to the Trial Court and affirmed, as modified.  The cost of the appeal is assessed to William Q. Acree.

_____
HERSCHEL PICKENS FRANKS, P.J.