IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2008

# STATE OF TENNESSEE v. JAMES ROOSEVELT FLEMING

**Appeal from the Circuit Court for Tipton County**
**No. 5357    Joseph H. Walker, III, Judge**

**No. W2007-02506-CCA-R3-CD  -  Filed February 25, 2009**

A Tipton County jury convicted the defendant, James Roosevelt Fleming, of one count of possession of 26 grams or more of cocaine with intent to deliver, a Class B felony, and one count of attempted possession of marijuana, a Class B misdemeanor.  The trial court sentenced the defendant to an effective sentence of thirty years as a career offender.  On appeal, the defendant argues that the evidence produced at trial was insufficient to support his felony conviction, and he also asserts that the trial court erred by allowing opinion testimony in violation of Rule 701 of the Tennessee Rules of Evidence.  After reviewing the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Gary F. Antrican, District Public Defender; and Periann S. Houghton, Assistant District Public Defender,  for the appellant, James Roosevelt Fleming.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At trial, Chief James Paris of the Mason Police Department testified that on March 8, 2006, he was part of a group of seven law enforcement officials, including members of the Memphis FBI Auto/Cargo Task Force and officers from the Mason and Atoka Police Departments, who were looking for the defendant.  Chief Paris and the other officers began their surveillance by following Shirley Ludwig, one of the defendant's girlfriends.  The officers followed her from Millington in Shelby County to her residence in Tipton County.  Chief Paris testified that when Ludwig arrived

at her residence, the officers confronted her, at which time she gave the officers information regarding the defendant's whereabouts. Ludwig drove two officers in her vehicle to a residence on Roseland Acres Road in Atoka, which is located in Tipton County. The other officers followed Ludwig to the residence. Upon the officers' arrival, Chief Paris observed the defendant in the front passenger seat of a Cadillac, with another man, Christopher Harper, sitting in the driver's seat. When the defendant attempted to exit the car, Chief Paris and two other officers ordered the defendant onto the ground. Chief Paris then searched the defendant for weapons before handcuffing him. In the course of his search, Chief Paris found a "large, ball-type white substance" in a plastic bag in the defendant's right front pants pocket. The substance was later identified as cocaine. Chief Paris also found $932 cash in the defendant's left rear pocket. Most of the currency was $20 bills, although Chief Paris said that there were "a couple" $100 bills.

After searching the defendant, the officers searched the car in which the defendant was found. Chief Paris found what was later identified as a "blunt," or marijuana cigar, on the passenger-side floor, and he also found a bag of what was later identified as marijuana and a bag of what was later identified as crack cocaine in the car's center console. He said that he did not find any pipes, straws, or mirrors on the defendant or inside the car. Over the defendant's objection, Chief Paris testified that in his opinion, based upon his thirty-two years of experience in law enforcement and his familiarity with drug sales and distribution, the cocaine found on the defendant was intended for distribution and not for the defendant's personal use. He based his opinion on the "size of the ball" of cocaine and upon the fact the defendant was carrying a large amount of money, most of which was in $20 bills. Chief Paris noted that he had observed "in the drug sales that narcotics is sold, might be sold, at $20 a rock or two rocks or however they want to sell it."

On cross-examination, Chief Paris said that he did not find plastic baggies, scales, or razor blades on the defendant's person or inside the Cadillac. He said that Harper was also arrested and that money was found on him as well. Chief Paris read into the record the affidavit prepared in connection with the arrest warrant in the case. In the affidavit, Chief Paris said that officers noticed the "strong odor of marijuana" coming from the Cadillac and that officers found a substance, which turned out to be 29 grams of cocaine, in the defendant's jacket pocket. Chief Paris testified that when the defendant was arrested, his jacket "was over his [pants] pocket and [the cocaine] appeared to be . . . in his jacket pocket. But when we got him up and got it out, it was in his pants pocket." He also said that while he did not testify about the marijuana odor on direct examination, the odor was in fact present at the time the officers approached the Cadillac.

Chief Jason Collins of the Gallaway Police Department testified that when he arrived at the house where the defendant was arrested, the police had the defendant on the ground. Chief Paris then gave Chief Collins a baggie of a white powdery substance. Chief Collins performed a field test on the substance, a test which indicated that the substance was cocaine. He also weighed the cocaine in the field using digital scales; the scales indicated that the cocaine weighed "approximately 29 grams." Chief Collins secured this evidence, as well as the money and the other substances found in the Cadillac at the time of the defendant's arrest, and transferred it to the Mason Police Department's evidence locker.

Chief Collins, who testified that he had eighteen years of law enforcement experience and

2

that he had made "thousands" of drug-related arrests, said that in his opinion, the cocaine recovered from the defendant was intended for distribution, not personal use. He said that the "large ball of cocaine is consistent with cutting it up and making crack with it, which it would make a larger profit for the person that's selling it. The denomination of money that was recovered from [the defendant] is consistent with the drug sales of $20 rocks." He further noted that in his experience, when a person bought cocaine for his personal use, "most of it is a very small amount, . . . maybe a gram or two. And they split it up with a razor blade into lines, and then they snort it, they can inject it, they can smoke it. But there was none of that there . . . ." Chief Collins said that the cigar wrappings found inside the car were "consistent most of the time with marijuana consumption," and that there was no white residue found in the marijuana blunt. On cross-examination, Chief Collins said that there were no plastic baggies or scales found in the Cadillac, which was registered to Harper.

Agent Dana Parmenter with the Tennessee Bureau of Investigation (TBI) Crime Lab testified that she tested four substances submitted to the Crime Lab in connection with this case. Agent Parmenter said that the substances were presented to her in evidence bags. She said that her tests indicated that the first bag contained 27.7 grams of cocaine; the second bag contained 7.9 grams of marijuana; the third bag contained 0.6 grams of marijuana; and the fourth bag contained "2.4 grams of cocaine base," or crack cocaine.

Harper, testifying for the defense, said that on March 8, 2006, he was at his mother's house when the defendant arrived on foot. Harper said that the defendant asked him to stay outside until the defendant's ride arrived. Harper informed the defendant that he was "fixing to roll [a] blunt." Because it was cold and windy outside, the two men got into Harper's Cadillac. Harper said that less than five minutes after he and the defendant got into the car, the police arrived. Harper said that he did not know where the drugs found in his car came from; he said that the only drugs he had on him at the time he was arrested was the marijuana found in the "blunt." Harper claimed that all charges against him in connection with this case were dismissed.[1]

The defendant testified that the night of March 8, 2006, he went to Harper's mother's house, where he waited on his ride home. He and Harper sat in Harper's car for "about five minutes" before his ride pulled up. At that point, he exited the car, at which point two men and one woman "jumped out" of a truck and told him to get on the ground. He claimed that one of the men punched him in the mouth and that the woman "stomped my head in the ground" and "bust[ed] my eye." He said that the police searched him but that they did not find any drugs in his pockets. He also said that he did not see any drugs in Harper's Cadillac while he sat inside the car. The defendant insisted that he was unaware of the origin of the drugs the police recovered from him. He said that he had "about five hundred [dollars] in my pocket" at his arrest; the defendant said that he was employed "lay[ing] carpet," and that he had been paid the Friday before his arrest.[2]

On cross-examination, the defendant testified that he earned $320 a week and that he was

---

[1]It is unclear from the record whether Harper was ever charged with any offense following his arrest; the disposition of any charges that may have been filed against him is also unknown.

[2]March 8, 2006, was a Wednesday.

3

paid this amount the Friday before his arrest. He said that Ludwig was the person for whom he was waiting the night of his arrest. The defendant reiterated his claim that the police planted the drugs on him, but he also admitted that he had not previously met the officers who arrested him and did not believe that the police had an "axe to grind" with him.

After receiving the evidence, the jury found the defendant guilty of possession of 26 grams or more of cocaine with intent to deliver, as charged in the indictment. The jury acquitted the defendant of one count of simple possession of marijuana but convicted him of attempted simple possession of marijuana.[3] This appeal followed.

## ANALYSIS

### I. Admissibility of Opinion Testimony

On appeal, the defendant asserts that "impermissible opinion testimony was used by the state to persuade the jurors to convict [the] [a]ppellant" of possession of cocaine with intent to deliver. Specifically, the defendant argues that the trial court erred by allowing two police officers to testify whether the cocaine found on the defendant was for his personal use or intended for sale. Our criminal code provides, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise possessing." Tenn. Code Ann. § 39-17-419 (2006) (emphasis added).

As both parties note in their briefs, this issue was not addressed in the defendant's motion for new trial. As such, the issue is waived on appeal and the defendant is limited to plain error review. See Tenn. R. App. P. 3(e), 36(a); Tenn. R. Crim. P. 52(b). Pursuant to the plain error doctrine, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. Crim. P. 52(b); see Tenn. R. App. P. 36(b). In determining whether plain error review is appropriate, the following factors must be established:

(a) The record . . . clearly establish[es] what occurred in the trial court;
(b) a clear and unequivocal rule of law [has] been breached;
(c) a substantial right of the accused [has] been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). On appeal, the defendant has the burden of establishing that these five factors are met. State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007) ("Gomez II") (citing State v.

---

[3]The grand jury had also indicted the defendant on one count of violating the habitual drug offender statute, but this count was dismissed.

<u>Bledsoe</u>, 226 S.W.3d 349, 355 (Tenn. 2007)).  The appellate court need not consider all five factors if any single factor indicates that relief is not warranted.  <u>Smith</u>, 24 S.W.3d at 283.

*Record on Appeal*

The record clearly reflects what occurred in the trial court as to this issue.  Chief Paris testified regarding the cocaine that was found on the defendant at his arrest, noting that the defendant was not in possession of drug paraphernalia at that time.  The State, after eliciting testimony that Chief Paris had been an officer for thirty-two years and had made "numerous drug arrests," then asked Chief Paris whether in his opinion the cocaine recovered from the defendant was for personal use or was "possessed with an intent to deliver or sell."  The defendant objected on the grounds that the question called for a legal conclusion.  The trial court responded that it would allow Chief Paris to respond to the question if a proper foundation were laid.  The prosecuting attorney then asked the witness about his familiarity with drug sales and distribution, "drug or cocaine consumption," cocaine addiction, and arrests of drug suspects.  After this series of questions, the prosecuting attorney again asked Chief Paris whether, in his opinion, the cocaine recovered from the defendant was for the defendant's personal use or was meant for distribution.  The defendant again objected, arguing that a proper foundation had not been established.  The trial court overruled the objection and allowed the officer to respond to the state's question.  The record also reflects that during Chief Collins's testimony, after the officer testified regarding the defendant's arrest, the prosecuting attorney asked Chief Collins whether, in his opinion, the cocaine discovered on the defendant was intended for personal use or for distribution.  The defendant did not object to this question, which Chief Collins answered.

*Breach of Clear and Unequivocal Rule of Law*

However, the defendant cannot establish that a clear and unequivocal rule of law has been breached.  In this case, neither police officer was tendered as an expert witness, so the admissibility of their testimony is to be primarily judged by the standard established in Rule 701 of the Tennessee Rules of Evidence.  <u>See</u> <u>State v. Justin Bradley Haynie</u>, No. W2006-01840-CCA-R3-CD, 2007 WL 4335481, at *18 (Tenn. Crim. App. Dec. 7, 2007), <u>perm. app. denied</u>, (Tenn. May 5, 2008).  Rule 701 states :

> If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
> > (1) rationally based on the perception of the witness and
> > (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Tenn. R. Evid. 701(a)(1)-(2).  "Because it is the jury's duty to draw conclusions from the evidence presented, a 'non-expert witness must ordinarily confine his testimony to a narration of facts based on first-hand knowledge and avoid stating mere personal opinions.'"  <u>Justin Bradley Haynie</u>, 2007 WL 4335481, at *18 (quoting <u>State v. Middlebrooks</u>, 840 S.W.2d 317, 330 (Tenn. 1992)).

In <u>State v. Samuel L. Giddens</u>, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at *2

5

(Tenn. Crim. App. Nov. 15, 2004), this court addressed a case in which two TBI agents testified regarding specific characteristics of a drug seller as opposed to a drug user. One of the agents "testified that the packaging of the drugs and the quantity of the drug often indicate that a person intends to sell, rather than use, a drug." Id. The second agent "also stated that the quantity and method of packaging, as well as the lack of drug paraphernalia and presence of cellular telephones or pagers, indicate that a person is a drug seller." This court concluded that the agents' testimony was admissible under Rule 701, stating, "Based upon what they had perceived during their experience as narcotics officers, the agents testified to the factors that commonly distinguish one who possesses drugs for purpose of resale from one who possesses drug for personal use. They did not testify that the [d]efendant was guilty as charged." Id. at *3. Similarly, in this case both officers, who testified that they had extensive law enforcement experience and had made numerous drug-related arrests, testified that the large amount of drugs found on the defendant and the fact that the defendant had a large amount of cash on him, much of which was in $20 bills, was consistent with a person who intended to distribute the drugs rather than use them himself. This testimony was permissible under Rule 701, and the trial court properly admitted it. The defendant is denied relief on this issue.

## II. Sufficiency of Evidence

The defendant argues that the evidence produced at trial was insufficient to support his conviction for possession of twenty-six grams or more of cocaine with intent to deliver. We disagree.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As relevant to this case, a conviction for possession of cocaine with intent to deliver, a Class B felony, requires proof beyond a reasonable doubt that the defendant knowingly possessed cocaine with the intent to deliver. Tenn. Code Ann. § 39-17-417(a)(4) and (c)(1) (2006). In this case, evidence showed that at the time of his arrest, the defendant was found with a bag containing 27.7 grams of cocaine. This evidence is not disputed by the defendant on appeal. Rather, the defendant's

6

argument that the evidence was insufficient to sustain his conviction is grounded solely in his contention that there was not proof beyond a reasonable doubt that the defendant intended to deliver the cocaine. This assertion, in turn, was based largely on the defendant's argument that the officers' testimony regarding their opinions of whether the cocaine found on the defendant was intended for delivery was impermissible. As stated above, we have concluded that the trial court properly admitted this testimony. Both officers testified that the defendant was found with a large quantity of cocaine on his person at the time of his arrest, and they also testified that the fact that most of the money found on the defendant was in $20 bills was consistent with drug sales in which a "rock" of cocaine would be sold for $20. Additionally, Chief Collins testified that persons who use cocaine often use only about a gram at a time, much less than the amount which the defendant possessed at his arrest, and the evidence showed that no cocaine was found in the blunt that was recovered from Harper's Cadillac. This evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant intended to deliver the cocaine with which he was found upon his arrest. The defendant is therefore denied relief on this issue.

<u>CONCLUSION</u>

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

7