IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2018 Session

**STATE OF TENNESSEE v. DARRELL WAYNE BUMPAS**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-D-2676    Steve R. Dozier, Judge**

_____

**No. M2017-00746-CCA-R3-CD**

_____

Following a bench trial in the Criminal Court for Davidson County, the Defendant, Darrell Wayne Bumpas, was convicted of forgery over $1,000; criminal simulation over $1,000; theft of property over $1,000; and two counts of identity theft.  For these offenses, the trial court sentenced the Defendant to a total effective sentence of twelve years to serve in the Department of Correction.  On appeal, the Defendant asserts that the trial court improperly admitted into evidence a photocopy of the fraudulent check and still photographs from a bank security camera.  He argues that the State failed to properly authenticate the evidence under Tennessee Rules of Evidence 901 and 902.  The Defendant also asserts that his sentence is excessive.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Jon David Rogers, Hendersonville, Tennessee, for the appellant, Darrell Wayne Bumpas.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and Jennifer Charles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On October 31, 2014, the Davidson County Grand Jury indicted the Defendant for one count each of forgery over $1,000, criminal simulation over $1,000, theft of property

over $1,000, and two counts of identity theft. On August 1, 2016, the Defendant, through counsel, filed a written motion to waive a trial by jury in accordance with Rule 23 of the Tennessee Rules of Criminal Procedure. At a subsequent bench trial, Dennis Tulpa testified that on July 24, 2014, he worked as a personal banker and teller at Avenue Bank in Green Hills. Mr. Tulpa recalled that, around 4:15 p.m., a man entered the bank and cashed check number 17174 from "Tennessee Valley Home." Mr. Tulpa reviewed two photographs taken from inside Avenue Bank, and he identified himself in the photographs and stated that the photographs depicted where he worked. He noted that the photographs had a time and date stamp, which read "7-24-2014 at 4:18 [p.m.]" Mr. Tulpa testified that the photographs were captured on July 24, 2014, and kept in the regular course of business by Avenue Bank. He explained that the photographs had been printed out from a bank computer where they were stored. Mr. Tulpa identified the Defendant as the customer depicted in the photographs. He stated that the Defendant was a "non-client" of Avenue Bank and did not hold an account at the bank. Mr. Tulpa explained that tellers were instructed pursuant to bank policy that when cashing checks from non-clients they should ask to see a driver's license and copy the information from the license onto the back of the check next to the non-client's signature. Mr. Tulpa recalled that, when the Defendant approached Mr. Tulpa to cash check number 17174, the check bore the Defendant's signature, but he did not see the Defendant physically sign it. Mr. Tulpa viewed a copy of the check that was presented by the Defendant. Mr. Tulpa testified that he wrote the driver's license number, date of birth, expiration date and the date the driver's license was issued onto the back of the check. Mr. Tulpa stated that he got the information from the driver's license the Defendant presented to him. Mr. Tulpa noted that the photograph on the driver's license appeared to match the Defendant. After taking this information, Mr. Tulpa cashed the check, giving the Defendant $1,810.30.

Mr. Tulpa explained that the owner of the account on which the check was drawn, Tennessee Valley Homes, Inc. ("TVH"), later contacted Avenue Bank and reported that the check did not belong to them. The bank researched the claim, compared the check cashed by the Defendant to images of checks belonging to TVH and determined the check cashed by the Defendant was counterfeit. Mr. Tulpa stated that it was the policy of the bank that it would not pass along the loss to the client/account holder when a counterfeit check was passed. Instead, the bank incurred the loss of $1,810.30. Mr. Tulpa testified that he specifically remembered the Defendant because Mr. Tulpa did not "cash bad checks every day, so the incident [stood] out in [his] mind."

Detective Kevin Allen of the Metropolitan Nashville Police Department (MNPD) testified that, on July 24, 2016, he responded to Avenue Bank to investigate a possible fraudulent check passed at the bank. The bank provided Detective Allen with still photographs taken from the bank's security cameras that day, as well as a copy of the

signed check. Detective Allen compared the date of birth, driver's license number, and driver's license issuance and expiration dates that were written on the back of the check with the information on the Defendant's driver's license and found that the information on the check matched the Defendant's driver's license. Detective Allen also noted that the photograph of the Defendant on his driver's license resembled the man displayed in the still photographs provided by the bank. Detective Allen testified that the routing number and account number of the check passed by the Defendant matched the routing and account numbers for TVH's account. After speaking with bank personnel, Detective Allen spoke to a representative with TVH, Loraine Cash, about the check. Following his conversation with Ms. Cash, Detective Allen presented the case to the grand jury.

Loraine Cash testified that she was the office manager at TVH and that she kept the records of the company's financial transactions as part of her job. Ms. Cash recalled that on July 24, 2014, she "was doing the bank reconciliation and noticed that [she] had a dollar amount on the bank rec[onciliation] that was not in [her] computer." Ms. Cash spoke to a representative from Avenue Bank about the check, and the bank provided her with a copy of the check passed by the Defendant. Ms. Cash testified that the company name listed on the check, "Tennessee Valley Home," was wrong; she explained that the correct name was "Tennessee Valley Homes." She further noted that the date line on the check was in the wrong place. Ms. Cash said that, upon further investigation, she discovered that she had in her possession TVH's check number 17174, and it had not been issued. She stated that the check was "still in the box." Additionally, Ms. Cash searched the company's list of vendors to see if the Defendant had worked for TVH previously. The Defendant's name, however, was not on the vendor list.

Ms. Cash testified that only four people had "signature line authority" to write checks for TVH—Darrel Reifschneider, James Franks, Shelly Molar, and herself. Ms. Cash explained that Mr. Reifschneider was the secretary of TVH and that Mr. Franks was the president. She said that she was familiar with both of their signatures, as well as Ms. Molar's, and stated that their signatures did not look like the signatures on the check passed by the Defendant. She explained that it took two joint signatures for a check to be properly issued by TVH. Based on all of this information, Ms. Cash determined that the check passed by the Defendant was not issued by TVH and was, therefore, counterfeit. Ms. Cash stated that, due to Avenue Bank's policy, TVH did not incur any financial loss. The bank put the $1,810.30 back into TVH's account.

Darrel Reifschneider testified that he was part-owner of TVH, along with James Franks. Mr. Reifschneider explained that he was not involved in the day-to-day operations of the company and that Mr. Franks was the "operating partner." Mr. Reifschneider stated that he did not give permission to the Defendant or anyone else "to create another check other than [TVH's] company check[.]" Mr. Reifschneider testified

that neither of the signatures listed on the check passed by the Defendant were his. He stated that, to his knowledge, TVH had never employed the Defendant.

Jane Eakes, a certified document examiner, testified as an expert in handwriting analysis for the State. She explained that she had been provided with twenty known samples of the Defendant's signature, which she compared to the signature on the check passed by the Defendant at Avenue Bank. Ms. Eakes testified that, based on her training and experience, "all of these signatures were written by the same person" and that the Defendant signed the check passed at Avenue Bank on July 24, 2014.

The Defendant testified that on July 24, 2014, he went to Avenue Bank in Green Hills and cashed a check that he had received for "some work that [he] had done two weeks prior." When shown the copy of the check passed at Avenue Bank that day, the Defendant said that it "look[ed] like" the check he cashed. He agreed that his signature was on the back of the check, but he noted that his name was misspelled on the front of the check where he was listed as the payee and that his home address was listed incorrectly. The Defendant stated that he did not notice that TVH was misspelled on the front of the check and stated that the check "appear[ed] to be real."

The Defendant explained that he worked as a subcontractor, and two weeks prior, he responded to an ad on Craigslist about cleaning up an area prior to a building project. The Defendant explained that the work included demolishing a mobile home, cutting down some trees, removing brush, and "tak[ing] all of the trash[.]" The Defendant stated that he could not recall the name of the man from Craigslist who hired him to do the work but stated that the man worked for TVH.[1] The Defendant testified that he met with the man who hired him "out [in] East Nashville" and that the man spoke over the telephone to a lady named "Ms. Merriweather," who was "over the accounts of [TVH.]" The Defendant stated that he gave Ms. Merriweather a copy of his identification and a copy of his contractor's license. He denied altering the check before it was cashed, and he denied falsifying the front of the check to make it appear that TVH had written him a check. The Defendant stated that the man who had hired him gave him the check. He explained that he received only $400 for his work out of the $1,800 and that the man who hired the Defendant took the rest of the money to "pay the other workers."

At the conclusion of testimony, the trial court found the Defendant guilty as charged. The trial court held a separate sentencing hearing, at which the State submitted a copy of the Defendant's presentence report into evidence. Detective Allen testified that, in addition to the instant case, the Defendant had passed a fraudulent check on First

---

[1] The Defendant claimed that he had worked for TVH previously at a house "off of 8th Avenue South."

Tennessee Bank on the same date as the offense in the instant case, July 24, 2014. Both crimes involved counterfeit checks. The second check was in the amount of $2,175.50; it was written as payable to the Defendant from Leader Industries. After the offense was discovered in August 2014, the bank "took the loss." That case against the Defendant was still pending.

MNPD Officer James Jarvis testified that on May 2, 2009, he responded to an address on Dickerson Road, where he found an injured person, Steven Lambs. Mr. Lambs had lacerations on his nose, back, and forearm, and he informed Officer Jarvis that the Defendant had inflicted the injuries. Officer Jarvis testified that the Defendant was later convicted of aggravated assault based on the incident.

MNPD Officer Anthony Venable testified that he was working on July 20, 2013, when he conducted a traffic stop of the Defendant. Officer Venable explained that, when he asked for consent to search the Defendant, the Defendant "attempted to swing at [Officer Venable] with his left arm[.]" Officer Venable stated that he "was able to duck under that punch" and pepper spray the Defendant. However, before he was able to detain the Defendant, the Defendant got back into his vehicle and drove away. Based on this incident, the Defendant later pled guilty to assault and resisting arrest.

The Defendant testified that he owned a business called "Moving Helpers and Home Repair" that provided employment to college students. He explained that the business was a moving company but that they also did commercial, residential, and industrial cleaning, landscaping, and home repair. He stated that he employed "four people a day for about six days in a week." The Defendant also stated that he was the supervisor for "A Easy Move" moving company. He stated that his company usually earned about $14,000 a week. The Defendant testified that, in addition to his businesses, he started a non-profit organization, "Stay Connected and Informed," which provided help for individuals on probation or otherwise in need. He stated that this organization had assisted about 1,000 to 1,500 people. The Defendant said that, if he were incarcerated for the instant offenses, the businesses would "fall[] to nothing" and that the non-profit company would "suffer[] greatly." The Defendant testified that he was born in Nashville and that he had two brothers in the area and that he was "really close" with his family. He attended church twice a week at Brentwood Baptist Church. The Defendant stated that he suffered from depression, bipolar disorder, dizziness, and blindness. He explained that he had "brain damage, [his] eardrum got busted and [his] spine was injured." He stated that he had changed his life since his 2009 conviction for aggravated assault and requested that he be placed on probation for the instant offenses.

At the conclusion of the hearing, the trial court took the matter under advisement and then issued a written sentencing order. On each count, the trial court sentenced the

Defendant as a Career Offender to twelve years with sixty percent release eligibility. The trial court ordered the sentences to run concurrently and for the Defendant to serve his sentence in confinement. The judgments of conviction were entered on October 27, 2016.

On December 15, 2016, the trial court held a hearing on "status of attorney for appeal" and appointed trial counsel "for appeal and motion for new trial." On January 13, 2017, the Defendant filed a pro se "Motion for Leave to File for a New Trial." No amended motion for new trial was filed by trial counsel. At a hearing, trial counsel argued that the evidence was insufficient to support the Defendant's convictions and that the copy of the check and the still photographs from the bank security video were improperly admitted at trial. The trial court denied the motion for new trial on March 10, 2017.

On April 7, 2017, the Defendant filed a "Consolidated Motion for Arrest of Judgment and Reduction of Sentence[,]" pursuant to Rules 34 and 35 of the Tennessee Rules of Criminal Procedure.[2] On that same date, he filed a notice of appeal. On May 19, 2017, the trial court conducted a hearing and denied the motion for arrest of judgment and reduction of sentence.[3]

## **Analysis**

### 1. Improperly Admitted Evidence

The Defendant contends that the trial court improperly admitted into evidence a photocopy of the fraudulent check and still photographs from the bank security camera. He argues that the evidence was not self-authenticating and should not have been admitted based on Rules 901 and 902 of the Tennessee Rules of Evidence. The Defendant additionally asserts that the State failed to establish a sufficient chain of custody for the admission of the still photographs from the bank security camera. The State responds that the Defendant has waived consideration of his evidentiary claims by failing to raise them in his motion for new trial.

---

[2] In the motion, the Defendant argued that his sentence should be reduced "due to the fact that [the] Defendant was not benefitted by the representation of counsel until January of 2017, for purposes of all post-trial matters relevant to this case, the 120-day time frame does not toll under the Rule until after he was being benefitted by representation of counsel."

[3] The trial court's denial of the motion to reduce sentence is not challenged by the Defendant in this appeal.

- 6 -

*Motion for new trial*

Initially, we reject the State's assertion that the Defendant's evidentiary claims are waived based on his failure to include the issues in a timely motion for new trial. A motion for new trial was not required in this case because the trial was a bench trial. *See* Tenn. R. App. P. 3(e) (providing that prior to initiating an appeal as of right, defendants must file a motion for new trial "in all cases tried by a jury"); *McCormic v. Smith*, 659 S.W.2d 804, 806 (Tenn. 1983); *State v. Norman Eugene Banks*, No. M2008-01823-CCA-R3-CD, 2010 WL 2943115, at *3 (Tenn. Crim. App. July 26, 2010), *perm. app. denied* (Tenn. Dec. 14, 2010); *State v. Randy Lee Salyer*, No. E2008-01461-CCA-R3-CD, 2009 WL 1798381, at *2 (Tenn. Crim. App. June 24, 2009), *no perm. to appeal filed*; *State v. Daryl Dewitt Godwin*, No. W2008-00346-CCA-R3-CD, 2008 WL 5070130, at *4 (Tenn. Crim. App. Dec. 2, 2008), *no perm. to appeal filed*; *State v. Isaiah Burton, Jr.*, No. M2005-00690-CCA-R3-CD, 2006 WL 1896364, at *7 (Tenn. Crim. App. July 7, 2006), *perm. app. denied* (Tenn. Nov. 6, 2006).

Although the filing of a motion for new trial was not *required* in this case, nothing *prohibits* filing a timely motion for new trial, but a notice of appeal should be filed with the clerk of the appellate court within thirty days after the date of entry of the judgments appealed from if no timely post-trial motion is filed. *See* Tenn. R. App. P. 4(a). The Defendant's judgments of conviction were entered on October 27, 2016. Consequently, he had until November 28, 2016, to file a notice of appeal.[4] The Defendant did not file his notice of appeal until April 7, 2017, well outside the thirty-day time period for filing a notice of appeal.

Tennessee Rule of Appellate Procedure 4(c) states that, "in a criminal action, if a timely motion or petition under the Tennessee Rules of Criminal Procedure is filed in the trial court by the defendant . . . under Rule 33(a) for a new trial . . . the time for appeal for all parties shall run from entry of the order denying a new trial[.]" Tenn. R. App. P. 4(c). Tennessee Rule of Criminal Procedure 33(b) requires that a motion for new trial be made in writing and filed within thirty days of the date the sentencing order is entered. The trial court may not extend this time limit. Tenn. R. Crim. P. 45(b)(3). An untimely filed motion for new trial is a nullity and will not toll the thirty-day time period for filing a notice of appeal. *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); *see* Tenn. R. App. P. 4(c). In this case, the motion for new trial filed January 13, 2017, was untimely and did not act to toll or extend the time period for filing a notice of appeal.

---

[4] Thirty days after entry of the judgments was Saturday November 26, 2016. As such, the Defendant had until the next business day, November 28, to file either a timely motion for new trial or a notice of appeal, if not filing a motion for new trial. *See* Tenn. R. Crim. P. 45(a).

However, a timely filed notice of appeal is not jurisdictional in this court, and we may elect to waive the requirement in the interest of justice. Tenn. R. App. P. 4(a). Here, we elect to waive the timely filing of a notice of appeal requirement in the interest of justice.

*Photocopy of check*

During trial, the prosecutor passed Mr. Tulpa a photocopy of the front and back of the check that was presented by the Defendant and cashed. Mr. Tulpa testified that he wrote the driver's license number, date of birth, and the issuance and expiration date of the driver's license onto the back of the check. He stated that he got the information from the Defendant's driver's license, which the Defendant presented to Mr. Tulpa. Mr. Tulpa further stated that the photograph on the driver's license appeared to match the Defendant. Mr. Tulpa identified the check as the one he cashed for the Defendant in the amount of $1,810.30. The photocopied check was admitted as Exhibit 2, with no objection from the Defendant.

Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." "The failure to make a contemporaneous objection constituted waiver of the issue on appeal." *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008). Accordingly, we conclude that the Defendant waived plenary review of this claim by failing to raise a contemporaneous objection.

However, "when necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010). Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 640-41; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. The defendant bears the burden of

persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Here, the Defendant cannot show that a clear and unequivocal rule of law was breached. *See Adkisson*, 899 S.W.2d at 640-41. Rule 901 of the Tennessee Rules of Evidence states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Authentication can be accomplished through testimony of a witness with knowledge "that a matter is what it is claimed to be." *See* Tenn. R. Evid. 901(b)(1). Mr. Tulpa identified Exhibit 2 as the fraudulent check passed by the Defendant at Avenue Bank on July 24, 2014. Mr. Tulpa's testimony would be sufficient to authenticate the check. To the extent that the Defendant argues that the exhibit was inadmissible because it was a photocopy, Tennessee Rule of Evidence 1003 states that "[a] duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original." Tenn. R. Evid. 1003. Because there was no genuine question raised by the Defendant as to the authenticity of the original, the photocopy was properly admitted by the trial court. This issue is without merit.

*Still photographs from bank security camera*

During Mr. Tulpa's testimony, the prosecutor passed Mr. Tulpa two still photographs from Avenue Bank's security camera. Mr. Tulpa identified himself in the photographs and stated that the photographs depicted the bank where he worked. He noted that the photographs had a time and date stamp on them, which read "7-24-2014 at 4:18 [p.m.]" Mr. Tulpa testified that the photographs were captured on July 24, 2014, and kept in the regular course of business by Avenue Bank. He explained that the photographs had been printed out from a bank computer where they were stored. Mr. Tulpa also identified the Defendant as the customer depicted in the photographs. Defense counsel objected to the introduction of the photographs, arguing that the photographs had not been authenticated and that the photographs were not admissible because they were photocopies and not originals. The trial court overruled the Defendant's objection, noting that the rules of evidence allowed for duplicates and that Mr. Tulpa testified that the photographs were an accurate representation of the inside of the bank.

The Defendant failed to object to the admission of the photographs based on chain of custody. Accordingly, we conclude that the Defendant has waived review of this issue by this court. *Gilley*, 297 S.W.3d at 762. Regarding the Defendant's remaining challenges to the admission of the photographs, we conclude that, like the check, the photographs were authenticated through Mr. Tulpa's testimony, and the photocopies were admissible pursuant to Tennessee Rule of Evidence 1003 because there was no genuine

question raised by the Defendant as to the authenticity of the original. The Defendant is not entitled to relief.

## 2. Excessive Sentence

The Defendant next challenges his sentence on appeal, arguing that it is excessive and does not "comport with dictates and goals of T[ennessee] C[ode] A[nnotated] Sections 40-35-102 and 103." The State responds that the trial court properly sentenced the Defendant to twelve years' incarceration.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2016), Sentencing Comm'n Cmts.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2016); *Bise*, 380 S.W.3d at 706. While the trial court should consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2016); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2016).

We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *State v. Carter*, 254 S.W.3d 335,

345 (Tenn. 2008). In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2016).

In its order, the trial court noted that, in making its sentencing determination, it considered "(1) the evidence received at the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; [and] (6) the [Defendant's] potential for rehabilitation or treatment." Based on the Defendant's prior criminal record, which included ten felony convictions, the trial court found that the Defendant was a Career Offender for sentencing purposes. The trial court noted that the Defendant agreed that he was a Career Offender and, therefore, was subject to a twelve-year sentence as to each of the Class D felony convictions. Nevertheless, the trial court considered the enhancing and mitigating factors, finding that two enhancement factors and no mitigating factors applied to the Defendant's case. The trial court found, based on his criminal record, that "the [D]efendant ha[d] a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" and that "[t]he [D]efendant, before trial or sentencing, ha[d] failed to comply with the conditions of a sentence involving release into the community[,]" based on the

Defendant's four previous probation violations. For each count, the trial court sentenced the Defendant to twelve years with sixty percent release eligibility. The trial court considered the discretionary consecutive sentencing factors but determined that, in the interests of justice, the Defendant's sentences should run concurrently. Finally, the trial court determined that the Defendant was not a viable candidate for alternative release based on the nature of the crime, the Defendant's "extensive past criminal behavior," and the Defendant's "past inability to comply with alternative release," and ordered the Defendant to serve his sentence in the Department of Correction.

The record fully supports the trial court's sentencing determinations. The Defendant's convictions in the instant case for forgery over $1,000, criminal simulation over $1,000, theft of property over $1,000, and identity theft are all Class D felonies. *See* Tenn. Code Ann. §§ 39-14-105(a)(3); -114(c); -115(b); and -150(i)(1) (2014). Because the Defendant has more than six prior felony convictions, the trial court properly classified the Defendant as a Career Offender. *See* Tenn. Code Ann. § 40-35-108(a)(3) (2016). Accordingly, the trial court was required to sentence the Defendant to "the maximum sentence within the applicable Range III." *See* Tenn. Code Ann. § 40-35-108(c) (2016). The maximum Range III sentence for a Class D felony is twelve years. Tenn. Code Ann. §§ 40-35-111(b)(4); -112(c)(4) (2016). Although the trial court found applicable grounds upon which it could impose consecutive sentences, the trial court determined in its discretion that the sentences should run concurrently, for a total effective sentence of twelve years. Regarding the Defendant's request for alternative sentencing, the trial court found that the Defendant's past inability to comply with probation made the Defendant "not a viable candidate for alternative release." *See* Tenn. Code Ann. § 40-35-103(1)(C) (2016) ("[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant"). The trial court did not abuse its discretion in sentencing the Defendant.

## Conclusion

Based on the foregoing, the judgments of the criminal court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE