IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2012

## STATE OF TENNESSEE v. HERALAL NANDLAL

**Direct Appeal from the Criminal Court of Shelby County**
**No. 09-01571    James M. Lammey, Jr., Judge**

_____

**No. W2011-00142-CCA-R3-CD  - Filed August 6, 2012**

_____

The Defendant, Heralal Nandlal, was indicted on one count of aggravated robbery.  At the close of the State's proof at trial, the trial court, out of the presence of the jury, *sua sponte* revoked the Defendant's appearance bond.  The jury convicted the Defendant of aggravated robbery, and the Defendant now appeals.  On appeal, he asserts that the trial court demonstrated bias in its decision to revoke the Defendant's bond.  After a careful review of the record, we affirm the Defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal**
**Court Affirmed and Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Sean H. Muizers, Memphis, Tennessee, for the appellant, Heralal Nandlal.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background Facts and Procedure**

    The Defendant was indicted by the Shelby County Grand Jury of one count of aggravated robbery, a Class B felony.  The Defendant was tried before a jury on October 4-7, 2010.  The testimony at trial established that on the early morning of November 13, 2008,

the Defendant robbed Thomas Fletcher while threatening Fletcher with a hunting knife. Fletcher knew the Defendant as his neighbor who shared an adjoining townhouse. The Defendant initially came to Fletcher's door and asked for money and for the use of his cell phone. Fletcher obliged. The Defendant returned thirty minutes later, and Fletcher again allowed the Defendant to enter his home. When the Defendant asked for five more dollars, Fletcher refused. At this point, the Defendant grabbed a knife in Fletcher's living room and, according to Fletcher, "demanded money from me again with the threat of doing me in." Fletcher and the Defendant walked to Fletcher's bedroom so that Fletcher could retrieve his wallet. Fletcher removed the requested five dollars from his wallet, but the Defendant instead grabbed the wallet containing approximately two hundred dollars and fled.

Sergeant Michael Brown, Memphis Police Department ("MPD"), testified that he investigated the robbery and that he questioned the Defendant regarding the Defendant's involvement. According to Sergeant Brown, although the Defendant initially denied his involvement, the Defendant later admitted, "Okay, I did commit the robbery, but I needed money at the time. That was the reason why I did it." The Defendant also admitted to Sergeant Brown that he picked up a hunting knife and used it to confront Fletcher. Sergeant Gary Padgett, MPD, also testified regarding his involvement in the investigation of the robbery. He stated that the Defendant admitted to him that the Defendant pressed the knife against Fletcher's neck.

At the close of proof and outside the presence of the jury, the trial court *sua sponte* revoked the Defendant's appearance bond.[1] When defense counsel requested that the Defendant remain out on bond, the trial court stated:

> I understand, but experience has taught that on a Class-B felony, as serious as this, and the proof is all in – he knows what the proof is – I've heard the proof – I think it's highly likely that he will be convicted. I think it's a much – the flight risk is much, much greater. So that's the reason I'm revoking his bond. I think he's a much greater flight risk.

The jury deliberated and found the Defendant guilty of aggravated robbery.[2] Following a sentencing hearing, the trial court sentenced the Defendant as a standard

---

[1] The record indicates that the trial court conducted no evidentiary hearing before taking this action.

[2] The judgment form contains checks in boxes for both "Guilty Plea – Pursuant to [§] 40-35-313" and "Jury Verdict." The transcript indicates that the Defendant was convicted of aggravated robbery by jury verdict and not by guilty plea.

offender to eleven years. The Defendant filed a motion for new trial, raising numerous issues, including the trial court's bond revocation prior to the conclusion of the trial.

At the hearing on the Defendant's motion for new trial, the Defendant argued that the trial court erred in revoking his appearance bond. In denying the Defendant's motion for new trial, the trial court stated as to this issue:

I believe the primary purpose for being out on bond is to assist the Defense, in the defense, but, of course, at the end of all the proof there was no further need to be out on bond. That's one issue.

The second issue is I think that, after having heard all the proof, the chances of being a flight risk are much, much greater, as I experienced in a homicide case not too long ago where I allowed the Defendant to stay out till there was a verdict, a jury verdict, and he just decided that he did not want to hear what the verdict was and fled the building, so having had that experience, number one, and number two, there was no need for him to be out, and number three, I believe that he was a much greater flight risk after having heard all the proof and could plainly see that his chances of being convicted were pretty good. That was the reason why I did that.

Furthermore, I don't see how that affected the outcome of the trial. Obviously, the jury had no idea that his bond was revoked, so even if I did make a mistake in doing that, which I don't think I did, I don't think it would affect – be cause for a new trial. So I will show it denied on that basis, as well.

The Defendant appeals his conviction, claiming that the trial court erred in its decision to revoke the Defendant's bond.

Analysis

The Defendant claims on appeal that "the trial court erred in revoking [the Defendant's] bond at the close of proof before the jury had heard closing statements, instruction, or had returned a verdict." The State filed a motion to dismiss the Defendant's appeal based on the Defendant's failure to seek review of the bond revocation under Tennessee Rule of Appellate Procedure 8. ("Before conviction, as a prerequisite to review, a written motion for the relief sought on review shall first be presented to the trial court."). This Court initially granted the motion. The Defendant then filed a petition to rehear, claiming that the State and this Court misinterpreted his appeal as a review of the trial court's decision to revoke the Defendant's bond. Instead, the Defendant asserted, he "is appealing

the bias of the trial court judge as illustrated by his revocation of [the Defendant's bond]." This Court granted the Defendant's petition to rehear. Thus, we will not review whether the trial court's decision to revoke the Defendant's bond was appropriate due to the Defendant's failure to follow the required protocol under Tennessee Rule of Appellate Procedure 8.

Accordingly, the sole issue for appellate review is whether the trial court displayed judicial bias that prejudiced the Defendant. However, the issue presented in the Defendant's motion for new trial was whether the court erred in revoking the Defendant's bond. The Defendant did not include in the record a memorandum of law in support of his bias claim, nor did he argue bias at the hearing on the motion for new trial. Thus, the Defendant has waived the issue of bias for appellate review, absent a finding by this Court of plain error.[3] See Tenn. R. App. 3(e) ("[N]o issue presented for review shall be predicated upon error . . . unless the same was specifically stated in a motion for new trial; otherwise, such issues will be treated as waived.").

The doctrine of plain error provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). This Court may find plain error only if all five of the following factors are present: "(1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice." State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010) (citing State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007)); see also State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). We need not consider all five factors when the record clearly establishes that at least one of the factors is not met. State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010). It is the defendant's burden to persuade this Court that the trial court committed plain error and that the error "was of sufficient magnitude that it probably changed the outcome of the trial." Hester, 324 S.W.3d at 56 (citing State v. Bledsoe, 226 S.W.3d 349, 354-55 (Tenn. 2007)).

Tennessee Rule of the Supreme Court 10, Cannon 3(B)(5) states,

A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or

---

[3] Indeed, only a generous reading of the Defendant's brief would support an argument that the Defendant even raises bias as an issue. Moreover, the Defendant's brief does not address plain error review.

socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so.

The Defendant asserts that the Defendant "would have to appear a second day in front of the jury wearing the same outfit as he did the day before" and that "jurors would have the chance of seeing family members carrying clothes through the courthouse." However, defense counsel raised these two concerns at the time the trial court revoked the Defendant's appearance bond. The trial court allowed the Defendant's family members to bring him clothes so that he would not appear in the same clothes a second day. The trial court also discussed through which door the family should enter to avoid being seen by the jury with the Defendant's clothes. The Defendant has provided nothing in the record to indicate that either the Defendant appeared in the same clothes a second day or that a juror or jurors observed the family bring clothes for the Defendant. Thus, even assuming that the trial judge inappropriately revoked the Defendant's appearance bond in a manner that somehow indicated the bias of that judge,[4] the Defendant has not established that the error "was of sufficient magnitude that it probably changed the outcome of the trial." Hester, 324 S.W.3d at 56 (citing Bledsoe, 226 S.W.3d at 354-55). Therefore, the Defendant is entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. We, however, remand this matter to the trial court to correct the judgment order to reflect only that the Defendant was convicted in a jury trial.

_____
JEFFREY S. BIVINS, JUDGE

---

[4] We expressly note that we have chosen not to address the factor of plain error review of whether the trial court breached a clear and unequivocal rule of law by *sua sponte* revoking the Defendant's appearance bond without any evidentiary hearing prior to completion of the Defendant's trial.