IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2022

## STATE OF TENNESSEE v. DARRIN KEITH WARD

**Appeal from the Circuit Court for Dyer County**
**No. 17CR60     Lee Moore, Judge**

### No. W2021-00047-CCA-R3-CD

Aggrieved of his Dyer County Circuit Court jury convictions of possession with intent to sell or deliver more than 300 grams of cocaine and possession of a firearm with the intent to go armed during the commission of a dangerous felony, the defendant, Darrin Keith Ward, appeals, arguing that the trial court erred by failing to dismiss for cause a juror who was sleeping during trial and committed plain error by permitting a police officer to testify as an expert in narcotics trafficking.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and TIMOTHY L. EASTER, JJ., joined.

H. Tod Taylor, Dyersburg, Tennessee, for the appellant, Darrin Keith Ward.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Dyer County Grand Jury charged the defendant with possession with the intent to sell or deliver more than 300 grams of cocaine, possession with the intent to sell or deliver more than 10 pounds of marijuana, and possession of a firearm with the intent to go armed during the commission of a dangerous felony.  Prior to trial, the parties agreed that the charge of marijuana possession should be severed, and the trial on the remaining counts took place on January 23, 2020.

The evidence adduced at trial established that members of the Dyersburg Police Department, including Officer Mason McDowell, went to the defendant's residence

on January 4, 2017, to execute a search warrant. The officers stopped the defendant when he exited the residence and advised him of their purpose. The defendant immediately acknowledged "that he had items in his residence" that would result in his going to jail and that the character of the items inside could result in "fed time stuff." Inside the residence, the defendant "began pointing out items to us, opening kitchen cabinets, opening drawers, pointing to items that were laying on countertops." Ultimately, the officers discovered "numerous packages" of "a white powder substance that were packaged in individual sandwich baggies" along with two sets of digital scales and $6,045 in cash that was "rubber-banded off" into bundles and placed in "separate locations throughout the kitchen area." Several of the bundles had handwritten notes bearing names and amounts affixed to them. Officers also found a black sports bag that contained more of the bagged, white powder substance and a .45-caliber handgun and ammunition. The officers weighed and field tested the white powdery substance and determined that it was 20 ounces of cocaine.

Tennessee Bureau of Investigation Special Agent and Forensic Scientist Rachel Strandquist performed forensic testing on the white powder substance. Agent Strandquist performed chemical testing on 337.41 grams of the substance and determined it to be cocaine. She said that she did not test the remaining amount, which had a gross weight of 139.7 grams, explaining that "the final weight threshold" for cocaine in Tennessee "is 300 grams."

Based upon this evidence, the jury convicted the defendant as charged. The trial court imposed a total effective sentence of 21 years' incarceration. The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant claims entitlement to a new trial on grounds that one of the jurors slept during his trial and that the trial court committed plain error by permitting Officer McDowell to testify as an expert on the illegal narcotics trade.

*I. Sleeping Juror*

The defendant first asserts that he is entitled to a new trial because one of the jurors was sleeping during the trial. The State contends that the defendant has failed to establish that any juror actually slept during trial.

During Officer McDowell's testimony, defense counsel pointed out that one juror "seems to be on the sleepy side" and asked the court to "keep an eye on" the juror. The prosecutor replied that he "didn't notice," and the defendant replied that the juror had "been dropping off several times." The court then instructed the members of the jury to "stop us" should they "get a little tired or sleepy." The court told the jury, "We'll stand, stretch, move around just a little bit. Okay?" Later, as Agent Strandquist provided a technical explanation of the types of chemical tests performed in this case, the trial court

stopped the proceedings and said, "Let's everybody stand up and stretch a little bit." Then, at the conclusion of the jury charge, the trial judge told the attorneys during a bench conference that "[a]fter this jury trial is over with, after the jury has come back," he intended to "keep that [juror], the one that can't stay awake" so that he could tell her "that I think that she's got sleep apnea." The judge added, "I'm going to tell her because she needs to do something -- you can die from that."

At the hearing on the motion for new trial, the trial court noted that although defense counsel kept using the "term 'sleeping,'" "[t]here is a difference in sleeping and nodding off . . . . And that's what happens with sleep apnea. And I know because I have sleep apnea myself." In the order denying the motion for new trial, the trial court indicated that it had "advised the attorneys at a bench conference that the Court was going to speak to a juror who had shown difficulty in staying awake during parts of the trial" not because "the juror was sleeping, but to indicate that it was possible that this juror had sleep apnea and the Court wanted to mention this issue to the juror so that the juror could seek some treatment." The trial court specifically found that "[t]here was no issue of whether or not the juror was sleeping" and reiterated that it merely "wanted the attorneys to know why the Court was speaking to the juror" following the trial.

Although a sleeping juror "may be a ground for a new trial where the objection was promptly raised and prejudice is shown, the fact that a juror was asleep in the jury box during a portion of the trial is not alone ground for a new trial" in the absence of an affirmative showing of prejudice. *State v. Chestnut*, 643 S.W.2d 343, 346 (Tenn. Crim. App. 1982). Proof that a juror was asleep, standing alone, will not warrant relief. A reviewing court may consider "[t]he length of time during which the juror slept and the importance of the evidence, if any, which was taken during this period." *Id.* Importantly, "[t]he mere fact that a juror became drowsy for a short time is not of itself ground for a new trial." *Id.* (citation omitted).

The defendant asks this court to make several inferential leaps to reach a conclusion that the trial court allowed a juror to sleep during crucial points of the trial. First, he asks us to find that the juror was sleeping during Officer McDowell's testimony based upon defense counsel's assertion that the juror was "on the sleepy side" and "nodding off." Second, he asks us to presume from a silent record that the trial court gave a stretch break because it had "noted once again that the juror was asleep." Third, he asks us to assume that "the juror was likely asleep for some time before" the jury charge. He then argues that, having made these two assumptions, we should necessarily conclude that the juror's sleeping "was a persistent and recurring issue throughout the one-day trial." In our view, however, the record does not support such a conclusion, primarily because the defendant has failed to establish that the juror, rather than exhibiting drowsiness, actually slept, let alone that the juror slept through critical portions of the trial. This is particularly

-3-

true given the trial court's finding that "there was no issue of whether or not the juror was sleeping." Defense counsel, who first noticed the sleepy juror, never mentioned the juror's sleeping again until his motion for new trial. As a result, it is unclear from the record what, if any, parts of the evidence the juror missed. Under these circumstances, the defendant is not entitled to relief on this issue.

## II. Officer McDowell's Testimony

The defendant next asserts that the trial court erred by permitting Officer McDowell to testify as an expert witness in the field of illegal narcotics and drug transactions. The defendant acknowledges that he did not lodge a contemporaneous objection to the certification and that he did not raise the issue in his motion for new trial but asks this court to subject the claim to plain error review. The State avers that the trial court did not err.

Whether properly assigned or not, this court may, "[w]hen necessary to do substantial justice, . . . consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial." Tenn. R. App. P. 36(b). This court will grant relief for plain error only when:

> the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it "probably changed the outcome of the trial."

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (quoting *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). The party claiming plain error bears the burden of satisfying all five criteria as a prerequisite to plain error review. *See id.* Because each factor must be established, we need not consider all five factors when a single factor indicates that relief is not warranted. *State v. Fayne*, 451 S.W.3d 362, 372 (Tenn. 2014) (citing *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007)). "[A]n error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Fayne*, 451 S.W.3d at 372 (citation omitted) (alterations in *Fayne*).

The defendant cannot avail himself of plain error review because he has failed to establish that a clear and unequivocal rule of law was breached. The admissibility of expert testimony is governed by Rules 702 and 703 of the Tennessee Rules of Evidence.

*See generally McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997). Rule 702 addresses the need for expert testimony and the qualifications of the expert: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 focuses on the reliability of expert opinion testimony. *See* Tenn. R. Evid. 703. Generally, the admissibility of expert testimony is a matter entrusted to the sound discretion of the trial court, and there can be no reversal on appeal absent clear abuse of that discretion. *See State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2009); *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404 (citing *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)). Here, the trial court permitted Officer McDowell to testify as an expert based upon his experience in conducting narcotics investigations. Although the trial court was hesitant to do so, it determined that the officer's experience and training made him an expert in the field. Given the opportunity to voir dire the officer about his qualifications, the defendant specifically declined. He may not now be heard to complain that the evidence presented about Officer McDowell's experience and training was insufficient to warrant his being declared an expert.

## III. Conclusion

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE